**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**March 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

| | |
|---|---|
| SHIELDS LAW GROUP, LLC; PAUL BYRD LAW FIRM, PLLC, | |
|     Attorneys - Appellants, | |
| v. | No. 21-3021 |
| STUEVE SIEGEL HANSON LLP; GUSTAFSON GLUEK, PLLC; WATTS GUERRA LLP; HENINGER GARRISON DAVIS, LLC; SEEGER WEISS LLP; SHAMBERG JOHNSON & BERGMAN; WEXLER WALLACE LLP; CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.; CLARK, LOVE & HUTSON, GP; HARE, WYNN, NEWELL & NEWTON, LLP, | |
|     Attorneys - Appellees. | |

_____

| | |
|---|---|
| HOSSLEY-EMBRY, LLP, | |
|     Attorney - Appellant, | |
| v. | No. 21-3022 |
| STUEVE SIEGEL HANSON LLP; GUSTAFSON GLUEK PLLC; WATTS GUERRA LLP; HENINGER GARRISON DAVIS, LLC; SEEGER WEISS LLP; SHAMBERG JOHNSON & BERGMAN; WEXLER WALLACE LLP; CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.; CLARK, LOVE & | |

HUTSON, GP; HARE, WYNN, NEWELL
& NEWTON, LLP,

       Attorneys - Appellees.

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:14-MD-02591-JWL-JPO)**

_____

Submitted on the motions:[*]

Jeffrey A. Lamken and Eric R. Nitz, Mololamken LLP, Washington, D.C., on the motion to dismiss for Watts Guerra, LLP.

Patrick J. Stueve and Bradley T. Wilders, Stueve Siegel Hanson LLP, Kansas City Missouri, Christopher A. Seeger, Seeger Weiss LLP Ridgefield Park, New Jersey, Daniel E. Gustafson, Gustafson Gluek PLLC, Minneapolis, Minnesota, on the motion to dismiss for Settlement Class Counsel.

Christopher B. Hood, Heninger Garrison Davis, LLC, Birmingham, Alabama, on the response in support of motions to dismiss for Heninger Garrison Davis, LLC.

Christina J. Nielsen, Nielsen Law Firm, Lorain, Ohio for Shields Law Group, LLC, and Paul Byrd Law Firm, PLLC, and Daniel Allen Hossley, Tyler, Texas for Hossley-Embry, LLP, on the Joint Suggestions in Opposition to Appellees' Motions to Dismiss.

_____

Before **HOLMES**, Chief Judge, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

**HOLMES**, Chief Judge.

_____

---

[*]    After examining the motions to dismiss, the responses, and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  These cases are therefore ordered submitted without oral argument.

After Syngenta AG ("Syngenta"), an agricultural company, commercialized and released genetically modified corn seeds without obtaining regulatory approval for its seeds to be imported into China, thousands of corn producers (as well as others in the corn industry) filed lawsuits against Syngenta. Ultimately, in 2018, Syngenta settled with class action plaintiffs for $1.51 billion. Out of that $1.51 billion, one-third of the total amount—$503,333,333.33—was set aside as attorneys' fees. But that was only the beginning of a different litigation saga that has now spanned years: litigation over the apportionment and allocation of the $503 million in attorneys' fees.

The district court, with the aid of a special master, crafted a two-stage approach to allocating the $503 million. At the first stage, the $503 million was divided into four pools: 49% for the common benefit pool for firms that litigated in Kansas, 23.5% for the common benefit pool for firms that litigated in Minnesota, 15.5% for the common benefit pool for firms that litigated in Illinois, and 12% for the pool for individually retained private attorneys ("IRPAs"). At the second stage, the money was awarded to individual firms and attorneys within each pool. Through a series of separate orders, the district court allocated most of these fees.

Participating law firms from a variety of states challenged this allocation scheme on multiple levels, and various firms filed a tidal wave of appeals and cross-appeals from the district court's orders. On February 28, 2023, we resolved most of the pending appeals related to the allocation of attorneys' fees in *In re Syngenta AG MIR 162 Corn Litigation* ("*In re Syngenta I*"), 61 F.4th 1126 (10th Cir. 2023).

3

Specifically, we concluded that the district court acted within its discretion in devising the four-pool allocation system, determining the amount to be allocated to each pool, awarding money to firms in the three geographic common benefit pools, and making an award of expenses. *See id.* at 1170. However, our opinion in *In re Syngenta I* did not fully resolve every appeal related to the allocation of attorneys' fees; some remain pending.

Among the appeals that remain pending are what we will refer to as the Watts Guerra Settlement Appeals. In these appeals, two sets of firms challenge the district court's approval of a discrete settlement agreement ("the Watts Guerra Settlement Agreement") between Watts Guerra LLP—one of the firms that originally challenged the district court's fee allocation orders—and the firms who were not appealing the district court's fee allocation orders ("the Appellee Parties").[1]

---

[1]    The terminology for the appellees in the Watts Guerra Settlement Appeals can be confusing. In particular, differently named—but overlapping in membership—groups of appellees have played distinct roles in these appeals and in the proceedings before the district court. One group of appellees are the "Joint Appellees," which consist of several leadership firms and attorneys that defended the district court's decisions in the earlier *In re Syngenta I* fee allocation appeals. *See* 61 F.4th at 1138 n.1 (listing the Joint Appellees). And another subset of appellees is "Settlement Class Counsel," which includes attorneys Patrick Stueve, Daniel Gustafson, and Christopher Seeger. *See* Settlement Class Counsel's Mot. to Dismiss, Nos. 21-3021 et al., at *1 (10th Cir., filed Feb. 17, 2021) (defining "Settlement Class Counsel"). In the interest of precision, we use these terms as the appellees themselves use them and remain faithful to their usage.

We also use the term "Appellee Parties." For purposes of this opinion, that term has the same meaning as that term is defined in the Watts Guerra Settlement Agreement—to refer to Patrick Stueve and Daniel Gustafson on behalf of themselves and all of the firms and attorneys who received money from the Kansas and Minnesota Common Benefit Pools who did not appeal the district court's fee

The two sets of firms also challenge the district court's disbursement of funds in a manner that incorporated the terms of the Watts Guerra Settlement Agreement. The first appeal, numbered 21-3021, is brought by Shields Law Group, LLC, Plaintiffs' Counsel, and Paul Byrd Law Firm, PLLC, Plaintiffs' Counsel (collectively, "Byrd/Shields").[2]  The second appeal, numbered 21-3022, is brought by Hossley-Embry LLP.  The two appeals present identical legal issues, and we will refer to Byrd/Shields and Hossley-Embry collectively as "the Objecting Firms."

Watts Guerra and Settlement Class Counsel, *see supra* note 1, moved to dismiss the Watts Guerra Settlement Appeals, arguing that we lack jurisdiction. Shortly thereafter, we abated the Watts Guerra Settlement Appeals.  After we issued our opinion in *In re Syngenta I*, the Objecting Firms moved to lift the abatement and enter a scheduling order.  Watts Guerra and the Joint Appellees, *see supra* note 1, oppose this request, arguing that while the abatement should be lifted, the appeals should be summarily dismissed for the reasons stated in the earlier motions to dismiss.

---

allocation orders, as well as Lew Garrison on behalf of himself and Heninger Garrison Davis LLC.  *See* Watts Guerra Settlement Agreement, Ex. A. to Jt. Mot. for Indicative Ruling, No. 2:14-md-02591-JWL, ECF No. 4485-1, at *1–2 (D. Kan., filed Nov. 3, 2020) (defining "Appellee Parties").  Again, there is substantial overlap between the attorneys and firms who make up the Appellee Parties, the Joint Appellees, and Settlement Class Counsel.

[2]      Paul Byrd Law Firm, PLLC Plaintiffs' Counsel consists of Paul Byrd, of the Paul Byrd Law Firm, PLLC; Clark W. Mason, of the Clark Mason Attorneys; Jerry Kelly, of the Kelly Law Firm, P.A.; James J. Thompson, Jr.; and Nolan Awbrey, of Awbrey Law.

For the reasons that follow, we agree with the Joint Appellees and Watts Guerra.  We thus **lift the abatement** of the Watts Guerra Settlement Appeals (Nos. 21-3021 and 21-3022), **grant** Settlement Class Counsel's and Watts Guerra's motions to dismiss these appeals for lack of subject-matter jurisdiction, and **dismiss** the appeals.[3]

## I.    BACKGROUND

We described the long and complex background of the attorneys' fees dispute in *In re Syngenta I.  See* 61 F.4th at 1138–70.  We thus confine our discussion of the background to only the broad strokes and the events necessary to understanding the Watts Guerra Settlement Appeals.[4]

### A.    The Historic Settlement

Syngenta is an agricultural company that marketed and commercialized genetically modified corn seed products, Agrisure Viptera and Agrisure Duracade,

---

[3]    As articulated in more detail below, *see infra* Part III, with respect to the Objecting Firms' motion to lift the abatement and enter a scheduling order, we (1) **grant it in part** to the extent that it requests that we lift the abatement of the Watts Guerra Settlement Appeals; (2) **deny it in part (as moot)** to the extent that it requests that we enter a scheduling order in the Watts Guerra Settlement Appeals; and (3) **defer ruling on it in part** insofar as it requests that we take any action on the IRPA Pool Allocation Appeals (Nos. 21-3110 and 21-3111).  We take no action on any aspect of the IRPA Pool Allocation Appeals or the Contingent Cross-Appeal.

[4]    In addition to the discussion of the background in *In re Syngenta I*, 61 F.4th at 1138–70, we take judicial notice of documents appearing on the district court's docket and on our own docket.  *See* Fed. R. Evid. 201; *Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020); *United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012); *see also Griffin v. United States*, 109 F.3d 1217, 1218 n.1 (7th Cir. 1997).

and allowed them to be imported into China without obtaining China's regulatory approval to do so.  When China discovered the genetically modified seeds in American import shipments, China closed its markets to American corn, which led to a fall in corn prices and financial injury to corn farmers and producers.  As a result, corn farmers and producers filed thousands of lawsuits against Syngenta in multiple jurisdictions—including class actions, mass tort actions, and individual actions.[5]

The Judicial Panel on Multidistrict Litigation consolidated hundreds of these suits into a multi-district litigation ("MDL") in Kansas federal court; additionally, thousands of suits were consolidated in a Minnesota state court, and other suits were litigated in Illinois federal court.  The Kansas district court (hereinafter referred to as "the district court") appointed several attorneys as co-lead counsel for the Kansas MDL ("Kansas Co-Lead Counsel"); these attorneys would play a substantial role in the development of the original litigation and the fees dispute.[6]  In Minnesota, the

---

[5]    Completely separate from the fee dispute at issue here, a number of corn producers sued Watts Guerra—their lawyers—for failing to disclose the benefits of participating as class members rather than as individual plaintiffs.  *See Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1252 (10th Cir. 2022).  The district court dismissed all of the producers' claims against Watts Guerra, concluding, among other things, that the producers had not suffered an economic injury because they were permitted to participate in the Syngenta settlement.  *See id.*  We affirmed the district court's judgment (and concluded that we lacked appellate jurisdiction over some of the decisions that the producers purported to challenge).  *See id.* at 1271.

[6]    These included attorneys from Stueve Siegel Hanson, LLP; Gray, Ritter, & Graham, P.C.; Hare Wynn Newell & Newton L.L.P.; and Gray Reed & McGraw P.C.

firms involved in coordinating the litigation included Watts Guerra and the Paul Byrd Law Firm, PLLC of Byrd/Shields.

After a jury trial in Kansas resulted in a substantial award for the Kansas class, Syngenta expressed interest in pursuing a global settlement. In February 2018, Syngenta and a class of corn producers reached a nationwide settlement agreement that resolved the claims against Syngenta. As part of the settlement, Syngenta agreed to pay $1.51 billion in exchange for the release of all claims arising out of the debacle over the genetically modified seeds. The district court preliminarily approved the settlement, and, in an order issued on December 7, 2018 ("the December 2018 Aggregate Fee Order"), it finalized its approval of the settlement and awarded one-third of the total settlement amount ($503,333,333.33) as attorneys' fees. *See* Jt. App., Vol. XXII, at 5088–89 (Dist. Ct. Mem. & Order, filed Dec. 7, 2018). But the question of how to allocate that sum among the myriad firms involved in the litigation remained.[7]

## B.    The Four Pool System for Allocation of Attorneys' Fees

### 1.    The December 2018 Fee Allocation Order

On November 21, 2018, the special master issued a report and recommendation that, among other things, set forth a detailed recommendation for

---

[7]    A number of corn producers challenged the district court's approval of the Settlement Agreement and the division of the $503 million award between the producers (who received two-thirds) and their attorneys (who received one-third). However, the corn producers ultimately settled, and their appeals were dismissed.

how to allocate the $503 million.  Various firms, including the Objecting Firms, filed objections to the report and recommendation.

On December 31, 2018, the district court issued a fee allocation order ("the December 2018 Fee Allocation Order") that largely accepted the special master's recommendation.  *See* Jt. App., Vol. XXIII, at 5348–49 (Dist. Ct. Mem. & Order, filed Dec. 31, 2018).  Based on the recommendation of the special master, the district court ultimately created a four-pool allocation scheme to divide the $503 million.[8] This four-pool allocation system is critical to understanding the instant appeals.

To begin, three "common benefit pools" were created, corresponding with the litigation in Kansas, Minnesota, and Illinois, which we refer to as the Kansas Common Benefit Pool, the Minnesota Common Benefit Pool, and the Illinois Common Benefit Pool, respectively.  For these three pools, each attorney was placed in the pool corresponding to the state in which they performed the bulk of their work. Each attorney could seek a fee award from their designated pool for any work they performed that benefited the settlement class as a whole or the settlement negotiation process (referred to as common benefit work)—regardless of where that work was actually performed.

The fourth pool, the IRPA Pool, was different.  That pool was designed so that attorneys could receive a portion of the $503 million for work that they performed that did *not* benefit the class as a whole—in other words, for work that was done on

---

[8]     The district court also awarded $48,842,866.12 in expenses in addition to the $503 million award of attorneys fees.

behalf of individual clients.  For the IRPA Pool, "attorneys' recoveries would be dictated by their clients' claim recoveries from the Settlement" with Syngenta.  *In re Syngenta I*, 61 F.4th at 1141.  Thus, the amount received by each attorney in the IRPA pool would be proportionate to the amount that their corn producer clients received as part of the Syngenta settlement.  Attorneys could recover fees both from one of the common benefit pools (for any work that benefitted the common good) and from the IRPA pool (for any work that did not benefit the common good).

To effectuate this four-pool allocation scheme, the district court had to confront the reality that existing fee agreements were already in place.  Consequently, the district court abrogated (1) existing contingent fee agreements between corn producer clients and their attorneys and (2) joint prosecution agreements between various attorneys.

In terms of apportionment between the pools, after weighing the contributions of the attorneys in the various fora and the work done by the IRPAs, the district court allocated (1) 49% of the total fee award to the Kansas Common Benefit Pool; (2) 23.5% to the Minnesota Common Benefit Pool; (3) 15.5% to the Illinois Common Benefit Pool; and (4) 12% to the IRPA pool.[9]

---

[9]     These percentages were slightly different from those originally recommended by the special master in her report and recommendation, to which a number of firms objected.  Specifically, the special master originally recommended (1) 50% for the Kansas Common Benefit Pool; (2) 24% for the Minnesota Common Benefit Pool; (3) 16% for the Illinois Common Benefit Pool; and (4) 10% for the IRPA Pool.  In recognition of the substantial time put in by the IRPAs, the district court increased the portion of the total allocated to IRPAs and, by extension, slightly decreased the portion allocated to the other pools.

### 2.    Allocation Within the Common Benefit Pools

After the issuance of the December 2018 Fee Allocation Order, the next question was how to allocate each pool's share of the $503 million *within that pool*. For example, the 49% of the $503 million award—which totaled to $246,633,333.33—had to be allocated among the various firms in the Kansas Common Benefit Pool.  To do this, the district court (which was located in Kansas) would allocate the funds in the Kansas Common Benefit Pool.  Courts in Minnesota and Illinois would recommend how to allocate the funds in the Minnesota Common Benefit Pool and the Illinois Common Benefit Pool, respectively, and the district court would give great deference to those recommendations—though it retained the official power to allocate fees in those pools.

As discussed below, the district court issued separate orders allocating attorneys' fees within the Kansas Common Benefit Pool, the Minnesota Common Benefit Pool, and the Illinois Common Benefit Pool.  Additionally, the district court entered an order making awards of expenses.  Importantly, though, the district court did not actually disburse any of the funds it awarded in these orders; the awarded funds remained in escrow after the awards were made.

With respect to the Kansas Common Benefit Pool, the district court issued an order on March 20, 2019 ("the March 2019 Kansas Pool Order") accepting a recommended system of allocation prepared by Kansas Co-Lead Counsel.  *See* Jt. App., Vol. XXV, at 5859 (Dist. Ct. Order on Kan. Pool Allocation, filed Mar. 20, 2019).  Two firms immediately filed notices of appeal of the March 2019 Kansas

Pool Order.  Specifically, Watts Guerra and another group of firms led by Weller,

Green, Toups & Terrell, LLP, and Richard L. Coffman, P.C. ("Toups/Coffman") filed

notices of appeal with respect to this order.[10]  Additionally, a number of other firms,

including Hossley-Embry, named the March 2019 Kansas Pool Order as one of the

orders they were challenging in later-filed notices of appeal.  Notably, some of these

firms recognized that these notices of appeal might be premature because a final

judgment had not yet been issued.  For example, Watts Guerra noted that it

"recognize[d] that this notice of appeal may be premature . . . [because] the district

court's fee allocation likely is not final for purposes of appeal, at least until the

district court has issued orders concerning the allocation of the Kansas, Illinois, and

Minnesota common-benefit pools."  Jt. App., Vol. XXVIII, at 6449–50 (Watts

Guerra's Notice of Appeal, filed Apr. 19, 2019).

　　　　With respect to the Minnesota Common Benefit Pool, the Minnesota state

court issued an order on May 29, 2019, that recommended the adoption of (with some

modifications) the allocation methodology presented by Minnesota Co-Lead Counsel.

In an order dated July 16, 2019 ("the July 2019 Minnesota Pool Order"), the district

court adopted this approach over the objections of several firms, including

Byrd/Shields.  *See* Jt. App., Vol. XXIX, at 6864–65 (Dist. Ct. Order on Minn. Pool

---

[10]　　Both Toups/Coffman and Watts Guerra also raised challenges to the
earlier December 2018 Fee Allocation Order in their notices of appeal.

Allocation, filed July 16, 2019).  Byrd/Shields, among others, filed a notice of appeal with respect to the July 2019 Minnesota Pool Order.[11]

With respect to the Illinois Common Benefit Pool, the federal court in Illinois issued its recommended allocation in August 2019.  In an order issued on November 19, 2019 ("the November 2019 Illinois Pool Order"), the district court adopted this approach over the objections of multiple firms.  *See* Jt. App., Vol. XXXII, at 7434–35 (Dist. Ct. Order on Ill. Pool Allocation, filed Nov. 19, 2019).  Several firms, including Watts Guerra and Toups/Coffman, filed notices of appeal with respect to this order.

In July 2019, the district court issued an order ("the July 2019 Expense Order") that—over the objection of Byrd/Shields—adopted the special master's report and recommendation concerning expense awards.  *See* Jt. App., Vol. XXIX, at 6889 (Dist. Ct. Order on Expenses, filed July 19, 2019).  Byrd/Shields filed a notice of appeal challenging this order.[12]

---

[11]    Byrd/Shields's notice of appeal also challenged the December 2018 Fee Allocation Order and the March 2019 Kansas Pool Order.

[12]    Long after the relevant orders had issued, the Objecting Firms moved for reconsideration of the district court's December 2018 Fee Allocation Order and its July 2019 Minnesota Pool Order.  But the district court denied this request, concluding that (1) it lacked jurisdiction to consider the motion for reconsideration because the orders at issue had since been appealed, (2) even if the district court had jurisdiction, it would deny the motions as untimely, and (3) the motions also failed on their merits.

13

We refer to the appeals taken from these orders—as well as appeals from the district court's December 2018 Fee Allocation Order and the December 2018 Aggregate Fee Order—as the "Fee Allocation Appeals."[13]

### 3.    Early History of the Fee Allocation Appeals

Initially, we abated the Fee Allocation Appeals.  However, we lifted the abatement on March 11, 2020—after expenses had been allocated and fees had been allocated from the Kansas Common Benefit Pool, the Minnesota Common Benefit Pool, and the Illinois Common Benefit Pool.  After receiving copious briefs from the parties, we held oral argument a year later, on March 10, 2021.

## C.    The Watts Guerra Settlement Agreement

As noted above, Watts Guerra, a Minnesota law firm that was heavily involved in the litigation, was an appellant in the Fee Allocation Appeals.  While these appeals were pending, and after months of negotiations moderated by the Tenth Circuit Chief Mediator, Watts Guerra and the Appellee Parties—the firms in the litigation who were not appealing any orders (with the exception of contingent cross-appeals), *see supra* note 1—reached an agreement to end the litigation over Watts Guerra's fees. *See* Jt. Mot. for Indicative Ruling, No. 2:14-md-02591-JWL, ECF No. 4485, at *4 (D. Kan., filed Nov. 3, 2020).  The settlement between the parties was memorialized in the Watts Guerra Settlement Agreement.  *See* Watts Guerra Settlement Agreement,

---

[13]    The Fee Allocation Appeals included Nos. 19-3008, 19-3022, 19-3032, 19-3079, 19-3174, 19-3175, 19-3176, 19-3178, 19-3279, 19-3280, 19-3284, and 20-3002.

Ex. A. to Jt. Mot. for Indicative Ruling, No. 2:14-md-02591-JWL, ECF No. 4485-1, at *1–2 (D. Kan., filed Nov. 3, 2020).

The Watts Guerra Settlement Agreement contemplated the modification of some of the attorney fees' apportionment that had been made in the December 2018 Fee Allocation Order, the March 2019 Kansas Pool Order, the July 2019 Minnesota Pool Order, and the November 2019 Illinois Pool Order. Specifically, in exchange for the release of its claims, Watts Guerra would receive an additional $7 million "from the Appellee Parties' share of the Aggregate Fee Award to be paid to Watts [Guerra] from the Appellee Parties' fees awarded from the Kansas, Minnesota, and Illinois Common Benefit Pools." Watts Guerra Settlement Agreement, ECF No. 4485-1, at *2.[14]

The Watts Guerra Settlement Agreement defined the "Appellee Parties" as (1) Patrick Stueve on behalf of himself and all firms that were receiving fees from the Kansas Common Benefit Pool, except those firms who were appealing the district court's fee allocation orders; (2) Daniel Gustafson on behalf of himself and all firms that were receiving fees from the Minnesota Common Benefit Pool, except Watts Guerra and those firms who were appealing the district court's fee allocation orders; and (3) Lew Garrison on behalf of himself and Henninger Garrison Davis LLC,

---

[14] Originally, the Watts Guerra Settlement Agreement provided that Watts Guerra would receive an additional $7.5 million from the Appellee Parties. The settling parties later amended this amount to be $7,048,667, which is the $7 million amount that we discuss here. The Watts Guerra Settlement Agreement also provided that a sum from a separate settlement, the *Mensik* Settlement, would be transferred to Watts Guerra.

which received funds from the Illinois Common Benefit Pool.  *See id.* at *1–2.  Thus, the additional $7 million to be added to Watts Guerra's share of the $503 million would be funded by decreases in the amount received by many other firms in the common benefit pool *except* those firms that were appealing the district court's fee allocation orders—*viz.*, Toups/Coffman, Hossley-Embry, and Byrd/Shields, among others.  With respect to the latter firms, their portions of the $503 million would be unchanged.

Watts Guerra would be responsible for distributing the $7 million fee increase to firms in the sub-group with which it had litigated.  Moreover,

> [f]or purposes of dividing the Fee Increase among members of the Watts Guerra Group, Watts [Guerra] shall treat the Fee Increase as if it were an award from the IRPA Pool; in other words, Watts [Guerra] shall have the same rights and obligations to the Watts Guerra Group with respect to the Fee Increase as Watts [Guerra] already has with respect to its anticipated IRPA Pool award, for which it petitioned on behalf of itself and the entire Watts Guerra Group.

*Id.* at *3.  Thus, although the $7 million would not actually become part of the IRPA Pool, it would be treated as if it had been for purposes of distribution.  In other words, the $7 million reallocated to Watts Guerra would be distributed by Watts Guerra to the other firms in the Watts Guerra Group in the same fashion that a lump sum award from the IRPA Pool to Watts Guerra would be distributed.[15]

---

[15]    Distributing a lump sum award to their associated firms was one of the responsibilities of the law firms, including Watts Guerra, who sought an award from the IRPA Pool.  In a report and recommendation issued by the special master—which was later accepted by the district court—the special master observed that "many IRPA Submissions were made by one IRPA Submitting Firm on behalf of itself and

Several other aspects of the Watts Guerra Settlement Agreement bear mentioning. *First*, the Watts Guerra Settlement Agreement provided that "Interested Parties" would have the opportunity to object. *See id.* at *6. The Watts Guerra Settlement Agreement defined "Interested Parties" as, in relevant part, "any . . . person or entity with a purported interest in the Aggregate Fee Award [of $503 million], Expense Award, or Fee Allocation Orders." *Id.* at *2. Thus, among others, Toups/Coffman, Hossley-Embry, and Byrd/Shields qualify as "Interested Parties."

*Second*, with respect to interest on the fee and expense awards, the Watts Guerra Settlement Agreement provided:

> The Settling Parties agree that any earned interest they believe they are entitled to on their fee or expense awards under the [$503 million] Aggregate Fee Award may be used by the Appellee Parties to resolve the appeals, and they agree that if any earned interest remains after the Appellee Parties exhaust all settlement discussions in connection with the Appeals, such earned interest shall be allocated as determined by the MDL Court [i.e., the district court] following briefing by the Parties.

---

other associated law firms," so there were many instances in which one firm would be responsible for distributing portions of their slice of the IRPA Pool to other firms. *See* Suppl. Jt. App., Vol. I, at 54 (Special Master's R&R on IRPA Pool Allocation, filed May 14, 2021). The special master thus recommended requiring each group of firms to certify in writing that they had reached agreement on how their portion of the IRPA pool would be divided within that group. *See id.* ("Each IRPA Submitting Firm and their co-counsel . . . must certify in writing . . . that they have reached agreement regarding the appropriate allocation of the IRPA award with all co-counsel and/or referring counsel on whose behalf the IRPA Submitting Firm made IRPA Submissions."). And in Watts Guerra's revised petition for an award from the IRPA pool, it noted that "the Court should calculate and make a single award to Watts Guerra itself—with Watts Guerra responsible for dividing that award among itself and its associate counsel consistent with fee-sharing provisions in the underlying fee agreements." Revised Pet. for IRPA Pool Award by Watts Guerra LLP, No. 2:14-md-02591-JWL, ECF No. 4116, at *3 (D. Kan., filed Mar. 4, 2019).

*Id.* at *2.

  *Third*, the Watts Guerra Settlement Agreement included a "most favored nation clause."  Pursuant to this clause, the Appellee Parties—which, again, did not include Toups/Coffman, Hossley-Embry, or Byrd/Shields—agreed not to resolve any of the other pending appeals for "an amount equal to or greater than the [$7 million] Fee Increase, provided that, where multiple appeals were filed by the same appellant(s), such appeals shall be treated as 'one' appeal."  *Id.* at *3.  These pending appeals included, *inter alia*, appeals of the December 2018 Fee Allocation Order, the March 2019 Kansas Pool Order, the July 2019 Minnesota Pool Order, and the November 2019 Illinois Pool Order filed by Toups/Coffman, Hossley-Embry, and Byrd/Shields.  *See id.* at *3 n.3.

  *Fourth*, because the IRPA Pool allocation was still pending, the Watts Guerra Settlement Agreement provided that "[a]ll Parties" would be "entitled to pursue their pending petitions for an award from the IRPA Pool."  *Id.* at *3.  This included the right to appeal any IRPA Pool allocation orders, "provided that no Party is entitled to argue that the aggregate IRPA Pool should be increased or reduced, or otherwise for reversal or modification of the [District] Court's prior Fee Allocation Orders."  *Id.*

  The Watts Guerra Settlement Agreement was subject to several conditions precedent, including that the Appellee Parties must receive authorization from their own firms, Interested Parties must have an opportunity to object, and the district court must agree to approve the agreement.

**D.    The District Court's Approval of the Watts Guerra Settlement Agreement**

**1.    The Request for an Indicative Ruling**

Recognizing that the district court lacked jurisdiction to modify its earlier fee allocation orders because those orders had been appealed (and cross-appealed) by various firms, Watts Guerra and the Appellee Parties moved for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1.[16]  Specifically, they requested that the district court make "an indicative ruling that the [District] Court would approve the modifications to the fee allocation orders requested pursuant to the settlement, upon remand from the Tenth Circuit for that purpose."  Jt. Mot. for an Indicative Ruling, ECF No. 4485, at *2.  According to the movants, they "request[ed] these modifications to resolve their dispute, to avoid additional expense and delay, and in furtherance of judicial economy."  *Id.* at *8.

Watts Guerra and the Joint Appellees requested that "the Fee Allocation Orders be modified to increase the award of attorneys' fees to Watts Guerra by a total of $7,048,667."  *Id.* at *5.  The motion described in detail how Watts Guerra's fee increase would be funded:

> The Fee Increase shall be funded by a proposed reduction of the Kansas Pool, the Minnesota Pool, and the [Heninger Garrison Davis] fee award from the Illinois Pool in the following manner:

---

[16]    According to Federal Rule of Civil Procedure 62.1(a), "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may" defer considering the motion, deny the motion, or "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  And "[t]he district court may decide the motion if the court of appeals remands for that purpose."  FED. R. CIV. P. 62.1(c).

> (1) The Kansas Pool shall be reduced by $2,966,333.67, with corresponding *pro rata* reductions to each of the Kansas Firms (which by definition excludes the law firms awarded fees from the Kansas Allocation that have appealed the Court's Fee Allocation Orders[] . . .).  (2)  The Minnesota Pool shall be reduced by $1,582,333.33, with corresponding *pro rata* reductions to each of the Minnesota Firms (which by definition excludes Watts Guerra and the Watts Guerra Group as well as all other firms awarded fees from the Minnesota Allocation that appealed the Court's Fee Allocation Orders[] . . .).  And, (3) the [Heninger Garrison Davis] fee award from the Illinois Pool shall be reduced by $2,500,00.00, with the Illinois Pool reduced by that same amount to account for this reduction in the [Heninger Garrison Davis] fee award.

*Id.* at *5–6.  The movants repeatedly observed that the proposed modification would not impact the share of the funds received by the firms who were otherwise appealing the district court's orders, including Toups/Coffman, Hossley-Embry, and Byrd/Shields.  *See id.* at *6 ("The Settling Parties propose no reductions to any firm that has appealed the Fee Allocation Orders . . . ."); *id.* at *8–9 ("[T]he modification would make no changes to the fee awards to the other firms who have appealed the fee allocation.  The Fee Increase thus does not impact the other law firms that have appealed the Fee Allocation Orders.").

Byrd/Shields and Hossley-Embry—which, again, we will at times refer to as the Objecting Firms—filed a response in opposition to the motion for an indicative ruling.  *See* Byrd/Shields's and Hossley-Embry's Am. Objs. & Suggestions in Opp'n to the Jt. Mot. for Indicative Ruling, No. 2:14-md-02591-JWL, ECF No. 4492, at *1 (D. Kan, filed Nov. 18, 2020).  According to the Objecting Firms, Watts Guerra and the Appellee Parties "reached a private settlement agreement to divvy up the aggregate attorneys' fee award and ask this Court to bless the private agreement by

ordering money be shaved from each of the three jurisdictional pools and that money handed over to Watts Guerra," and the Objecting Firms urged the district court to "decline this invitation." *Id.* at *2. Primarily, the Objecting Firms argued that (1) the Settlement Agreement would in fact generate additional litigation; (2) the request for modification of the district court's fee orders showed that the original four-pool allocation was unreasonable; (3) the request for modification evinced backroom-dealing that was a reason to set aside the earlier fee allocation orders; and (4) if it approved the Watts Guerra Settlement Agreement, the district court would be shirking its responsibility to closely scrutinize the fee award.

In reply, Watts Guerra and the Appellee Parties argued that the Watts Guerra Settlement Agreement "has *no* financial impact on the fees [Byrd/Shields and Hossley-Embry] will receive," and that, as a result, those firms lacked standing to object. Reply in Support of Jt. Mot. for Indicative Ruling, No. 2:14-md-02591-JWL, ECF No. 4496, at *1–4 (D. Kan., filed Nov. 19, 2020) (citing *Tennille v. W. Union Co.*, 809 F.3d 555, 560 (10th Cir. 2015)). Additionally, Watts Guerra and the Appellee Parties disputed the way that Byrd/Shields and Hossley-Embry had framed the settlement, noting that the agreement "d[id] not request—and cannot support—reconsideration of the entirety of . . . [the] award of attorneys' fees." *Id.* at *2. And they argued that Byrd/Shields and Hossley-Embry had not provided adequate reasons for the district court to reject the settlement.

The district court held a hearing on the motion for an indicative ruling on December 11, 2020. *See* Minute Entry, No. 2:14-md-02591-JWL, ECF No. 4521 (D.

Kan., entered Dec. 11, 2020). At the hearing, the district court noted its reluctance to grant the motion for an indicative ruling, reasoning that if the settling parties were requesting an actual reshuffling of the fee allocation award, the district court would decline to do so because "the fee award was the result of a thorough and careful process," the award "was fair and reasonable," and "[n]o basis has been presented . . . by the movants here to find otherwise, and to modify the fee order that was predicated on that finding." Tr. of Mot. Hr'g, No. 2:14-md-02591-JWL, ECF No. 4526, at *5:6–10 (D. Kan., dated Dec. 11, 2020). But, on the other hand, the district court noted, if this was simply a matter of "the parties want[ing] to resolve their differences by a payment to Watts Guerra," the district court did not object and "nothing in the rules . . . would require court approval for such a settlement of the appeal." *Id.* at *5:11–15.

The district court then heard from the Appellee Parties, who noted that they "[we]re not in any way seeking to modify the court's prior finding[s]" regarding the fee award. *Id.* at *5:19–20; *see also id.* at *6:16–17 ("[W]e tried to make clear in our motion, we were not seeking in any way to call into question the appropriateness of [the original fee allocation]."). But even though they were not seeking to actually modify the prior fee allocation orders, the Appellee Parties and Watts Guerra wanted to seek the district court's approval of the Watts Guerra Settlement Agreement. Although their reasons for doing so are not entirely pellucid, the reasons appeared to be that (1) they believed it was required by Federal Rule of Civil Procedure 23(h); (2) the Settlement Agreement involved the entire Watts Guerra group; (3) the standpoint

22

of comity weighed in favor of it because some funds were being moved around; and

(4) the parties wanted an enforceable settlement agreement.  When the district court

inquired as to whether it would be required to make findings of fact and conclusions

of law pursuant to Rule 23(h), the Appellee Parties responded that those findings

would be that "judicial efficiency" and "public policy" weighed in favor of resolving

Watts Guerra's pending appeals by settlement.  *Id.* at *7:14–25.

### 2.     The December 2020 Indicative Ruling

On December 14, 2020, the district court entered an order ("the December

2020 Indicative Ruling") overruling the Objecting Firms' objections, granting the

motion for an indicative ruling, and noting that "[u]pon limited remand by the Tenth

Circuit, the Court will issue an order as proposed by movants."  Dist. Ct. Mem. &

Order, No. 2:14-md-02591-JWL, ECF No. 4524, at *1 (D. Kan., filed Dec. 14, 2020).

The district court reasoned that "[c]ourts always favor the settlement of disputes,"

and the Watts Guerra Settlement Agreement improves judicial economy because it

will "effectuate the resolution of all appeals involving Watts [Guerra]."  *Id.* at *3.  It

further noted that no party that would be actually affected opposed the Watts Guerra

Settlement Agreement.

The district court took pains to clarify, though, that it was not making a

substantive modification to its prior fee allocation orders:

> The Court makes clear that, by this ruling and by its subsequent
> order after remand, it is *not* modifying or reconsidering its findings
> and conclusions regarding the reasonableness and propriety of the
> method and amounts of [the] Court's previous allocation of fees
> among the four pools or its previous awards of fees from those

23

> pools. Movants have not challenged the reasonableness of the
> prior allocation and awards, and the Court reaffirms those findings
> and conclusions. By these present actions, the Court is only
> intending to modify its prior orders to the extent necessary to
> change the eventual distribution of money from the attorney fee
> fund to particular law firms to give effect to the settlement
> agreement between Watts [Guerra] and the other parties to the
> contract. The Court is not intending to affect in any way its prior
> awards to firms who are prosecuting appeals from the Court's
> allocation and award orders.

*Id.* at *3–4. The district court reiterated its doubt that it even needed to modify the

orders for the Watts Guerra Settlement Agreement to be consummated, because, after

all, "the other parties could simply agree to make payments to Watts [Guerra] after

they receive their fee awards from the common benefit pools." *Id.* at *4. But the

district court noted that it was persuaded that "the requested rulings would serve the

interests of judicial economy" because "by altering at the front end the amounts

distributed by the appointed administrator overseeing the attorney fee fund, the Court

will allow the agreed redistribution of fees to be accomplished in the most efficient

manner, while decreasing the likelihood of later delays or disputes concerning the

payments." *Id.*

The district court overruled Byrd/Shields's and Hossley-Embry's objections to

the Settlement Agreement. The district court first concluded that those firms "are not

included in the agreement . . . and their fee awards would not be affected in any way;

therefore, objectors have no interest in this issue, and thus they lack standing to

oppose the requested approval and modifications." *Id.* at *2 (citing *Tennille*, 809

F.3d at 560). Additionally, the district court disagreed that the Watts Guerra

Settlement Agreement called into question the reasonableness of the prior fee allocation orders, observing that the "[m]ovants have not argued that the prior orders were unreasonable or incorrect, and it is clear that the modifications to those orders are requested only to effectuate the settlement with Watts [Guerra]." *Id.* at *2–3.

### 3.     The January 2021 Settlement Order

In the wake of the December 2020 Indicative Ruling, Watts Guerra and the Joint Appellees filed a motion in this Court requesting a limited remand so that the district court could approve the settlement agreement.

The Objecting Firms and Toups/Coffman filed responses opposing the request for a limited remand. The Objecting Firms also bootstrapped to their response a request to resolve *all* of the pending Fee Allocation Appeals and vacate all of the relevant fee allocation orders. In reply, the movants contended that the Objecting Firms lacked standing to object and that they raised no actual argument against a limited remand (or against approval of the Watts Guerra Settlement Agreement).

In a summary order, we granted the movants' request and remanded all of Watts Guerra's pending appeals to the district court "for the limited purpose of entering an order approving the settlement agreement between the Movants." Order, Nos. 19-3008 et al., at *1 (10th Cir., filed Jan. 4, 2021). We also denied the requests made by the Objecting Firms to vacate all of the fee allocation orders.

On the following day, January 5, 2021, the district court issued an order ("the January 2021 Settlement Order") approving the Watts Guerra Settlement Agreement. *See* Suppl. Jt. App., Vol. I, at 4 (Dist. Ct. Order Approving the Watts Guerra

Settlement Agreement, filed Jan. 5, 2021).  The district court's order noted that it

"effects modification" of the December 2018 Fee Allocation Order, the March 2019

Kansas Pool Order, the July 2019 Minnesota Pool Order, and the November 2019

Illinois Pool Order in the limited manner set forth in the December 2020 Indicative

Ruling.  *Id.* at 5.

Much of the January 2021 Settlement Order tracked the earlier December 2020

Indicative Ruling word-for-word.  As an example, the district court again reiterated

that it was not *substantively* modifying its earlier fee allocation orders.  *See id.* at 4

n.1 ("The Court reiterates that by this ruling it is *not* modifying or reconsidering its

findings and conclusions regarding the reasonableness and propriety of the method

and amounts of [the] Court's previous allocation of fees among the four pools or its

previous awards of fees from those pools, and that the Court, for the sake of

efficiency, is only intending to modify its prior orders to the extent necessary to

change the eventual distribution of money from the attorney fee fund to particular

law firms to give effect to the settlement agreement.").

## D.    The District Court's Disbursement of Funds

### 1.    The Request for Disbursement of Funds

While the motion for an indicative ruling was pending, Watts Guerra and

Settlement Class Counsel filed a motion requesting disbursement of most of the $503

million attorneys' fees award.  *See* Mot. for Disbursement of Funds, No. 2:14-md-

02591-JWL, ECF No. 4497, at *1, *5 (D. Kan., filed Nov. 20, 2020).  Specifically,

the movants requested that the court disburse, minus a $30 million holdback, the

amounts awarded to the recipient firms in the March 2019 Kansas Pool Order, the July 2019 Minnesota Pool Order, and the November 2019 Illinois Pool Order. Under the proposed disbursement, $30 million of the awards made in those orders would remain held back in escrow. According to the movants, this $30 million holdback was "more than any legitimate estimate of what" the parties challenging the various fee allocation orders—including the Objecting Firms and Toups/Coffman—"[we]re seeking through their appeals." *Id.* at *4. This holdback seems to have been proposed with the goal of streamlining the reallocation process in case any of those parties prevailed on appeal. All of the law firms involved in the attorneys' fees dispute would receive the monies awarded to them by the fee allocation orders, including the Objecting Firms. The requested disbursement also included the amount awarded in the July 2019 Expense Order, though it did *not* include the funds allocated to the IRPA Pool, which had not yet been awarded to specific firms.[17]

The disbursement request was contingent on approval of the Watts Guerra Settlement Agreement and the resulting modifications to the earlier fee allocation orders. *See id.* at *2 ("Subject to and provided the Court grants the requested modifications pursuant to [the Watts Guerra] settlement agreement, Settlement Class Counsel now seek an order for disbursement . . . ."). Thus, if the motion to disburse was granted, the funds would be disbursed in a manner that comported with the Watts

---

[17] The movants did request that when the IRPA pool was awarded, the funds be disbursed within two weeks. Ultimately, the district court denied this request without prejudice.

Guerra Settlement Agreement. *See id.* at *5 (requesting that "the fees be distributed in accordance with [the district court's] Common Benefit Fee Awards, as modified by the proposed order approving the settlement with Watts Guerra, reduced pro rata to account for the $30 million holdback"). All told, the requested disbursement amounted to $412,714,426.35—about eighty-two percent of the $503 million—along with an additional $31 million in expenses.

### 2.    The Objecting Firms' Opposition

The Objecting Firms, as well as Toups/Coffman, opposed the distribution of any funds while their appeals of the fee allocation orders were pending. Initially, their briefing focused on the difficulty of clawing back the distributed funds if they or the other firms were to prevail on their appeals of the fee allocation orders. After the district court issued the December 2020 Indicative Ruling, the Objecting Firms escalated their opposition to the request for disbursement. In addition to requesting either supplemental briefing or a hearing on whether the district court lacked jurisdiction, the Objecting Firms asked the district court to issue an order "staying any ruling [on] the Motion for Disbursement of Funds . . . until the Tenth Circuit Court of Appeals has issued a mandate in the appeals taken from this Court's Orders allocating attorneys' fees and expenses." Jt. Mot. to Stay, No. 2:14-md-02591-JWL, ECF No. 4535, at *1 (D. Kan, filed Dec. 18, 2020).

In support of their motion to stay, the Objecting Firms argued that the requested disbursement would include the changes to the fee allocation orders implemented by the Watts Guerra Settlement Agreement and that these changes

"reallocate $7 million by taking it away from the three common benefit pools and putting it into the IRPA fund, but [the district court] will not allow all IRPAs to share in the now $67 million IRPA pool." *Id.* at *11; *see also id.* at *12 ("This 'reshuffling' of money among the four pools and giving Watts [Guerra] a dedicated bonus of $7 million from the money shaved from the other three pools financially harms [the Objecting Firms] because, if the IRPA fund was underfunded by $7 million, that money should be put into the IRPA fund for *all* IRPA to share pro rata, including the Movants, and not for the exclusive benefit of Watts Guerra, particularly where this Court has stated it will not make any findings or conclusions to justify such a windfall to Watts Guerra."). They further argued that the disbursement would disburse funds that had been improperly reallocated between the various pools by the Watts Guerra Settlement Agreement and that the district court had failed to make findings of fact or conclusions of law.[18]

The district court denied the motion to stay—as well as the request for supplemental briefing and a hearing—in an order issued on December 31, 2020. *See* Dist. Ct. Mem. & Order, No. 2:14-md-02591-JWL, ECF No. 4546, at *1 (D. Kan., filed Dec. 31, 2020). It noted that there would be no utility in granting a stay because the relief sought in the motion to stay was also what the Objecting Firms "s[ought] in

---

[18]     Additionally, Byrd/Shields and Hossley-Embry filed a motion in this Court requesting that we enjoin the district court from granting the motion for disbursement. *See* Mot. to Enjoin the Dist. Ct., Nos. 19-3008 et al., at *1 (10th Cir., filed Dec. 16, 2020). We denied that motion. *See* Order, Nos. 19-3008 et al., at *1 (10th Cir., filed Jan. 6, 2021).

opposing the motion for disbursement," and the district court would consider the arguments made by the Objecting Firms in support of their motion to stay when it ruled on the merits of the motion to disburse.  *Id.* at *4.

### 3.     The January 2021 Disbursement Orders

On January 12, 2021, the District Court issued a pair of orders ("the January 2021 Disbursement Orders") granting the motion to disburse the funds and ordering the funds to be immediately made available to the various firms.  *See* Suppl. Jt. App., Vol. I, at 9–22 (Dist. Ct. Mem. & Order, filed Jan. 12, 2021); *id*. at 23–24 (Dist. Ct. Order Granting Mot. for Disbursement of Funds, filed Jan. 12, 2021).  In the more substantive of the two orders, the district court—after concluding that it had jurisdiction to disburse the funds—provided its reasons for granting the motion to disburse.  The district court rejected the Objecting Firms' argument that the money would be too difficult to claw back—largely because of the $30 million that was held back in escrow—and noted that, as a matter of course, fees were often disbursed when appeals of the fee awards were pending.

In the more substantive order, the district court also rejected the Objecting Firms' "many arguments relating to the Watts Guerra settlement and the Court's orders concerning that settlement."  *Id*. at 18.  In particular, the district court concluded that it did not violate Rule 23(h) in approving the Watts Guerra Settlement Agreement because "the Court did not disturb its [prior] fee awards, but rather it altered the eventual distribution of those awards by the administrator to effect the Watts Guerra settlement, for the sake of efficiency," so additional findings of fact

30

and conclusions of law under Rule 23(h) were not required. *Id.* at 19; *see also id.* (reiterating that "[t]he Court did not make any substantive modification of its prior fee awards").[19]  Additionally, the district court rejected the argument that the Watts Guerra Settlement Agreement had added funds to the IRPA Pool that the Objecting Firms would not be allowed to share in.  Specifically, it concluded:

> Shields argues that the agreement sanctioned by the Court adds $7 million to the IRPA pool, but that only Watts Guerra may receive that amount, with other firms denied the opportunity to share in that addition to the pool.  That argument is frivolous, based on a blatant misreading of the agreement.  The agreement and the Court's orders make clear that the only modifications are to the common benefit pools, not the IRPA pool, and the agreement provides that Watts Guerra shall treat the additional funds *as if they had come from the IRPA pool for the purpose of distributing those fund[s] to associated counsel.*

*Id* at 19–20.[20]  In the second, summary order, the district court ordered the immediate disbursement of the funds by Settlement Class Counsel.

---

[19]     In its earlier order denying the Objecting Firms' request for a stay, the district court foreshadowed this conclusion, noting that "Shields appears to have willfully misrepresented what the Court did in the indicative ruling.  The Court made clear in that ruling that it was not disturbing its findings regarding the reasonable allocations and awards of attorney fees . . . and that it was merely agreeing to alter the distribution of fees . . . in accordance with the private settlement agreement for the sake of efficiency."  Dist. Ct. Mem. & Order, ECF No. 4546, at *5 n.5.

[20]     The district court also rejected an argument advanced by the Objecting Firms that a letter sent to one of their component firms showed that *all* firms were being forced to fund the Watts Guerra Settlement Agreement, regardless of whether they were a party to that agreement.  Specifically, the district court noted that the letter was concededly sent in error, and its sending did not indicate that non-parties to the Watts Guerra Settlement Agreement would be financially impacted.

Shortly thereafter, Byrd/Shields and Hossley-Embry filed amended notices of appeal challenging the January 2021 Settlement Order and the January 2021 Disbursement Orders. Their appeals were docketed as No. 21-3021 and No. 21-3022, respectively. Additionally, Toups/Coffman amended earlier notices of appeal to include challenges to the January 2021 Settlement Order and the January 2021 Disbursement Orders. Their appeal was docketed as No. 21-3020.

**E.    Early History of the Watts Guerra Settlement Appeals**

After the Watts Guerra Settlement Appeals were docketed, Watts Guerra and Settlement Class Counsel moved to dismiss these appeals. *See* Watts Guerra's Mot. to Dismiss, Nos. 21-3021 et al., at *1 (10th Cir., filed Feb. 17, 2021); Settlement Class Counsel's Mot. to Dismiss, Nos. 21-3021 et al., at *1 (10th Cir., filed Feb. 17, 2021). These motions remain pending.

As explained in more detail below, Watts Guerra's motion primarily argues that the Objecting Firms lack standing to appeal the January 2021 Settlement Order in which the district court approved the Watts Guerra Settlement Agreement. And in their motion to dismiss, Settlement Class Counsel (1) joined Watts Guerra's standing argument; (2) argued that the Objecting Firms lack standing to object to the January 2021 Disbursement Orders; and (3) argued that even if the Objecting Firms had standing, their challenge to the January 2021 Disbursement Orders would necessarily be mooted by resolution of the Fee Allocation Appeals, so the Watts Guerra

32

Settlement Appeals should be abated.[21]  Heninger Garrison Davis, LLC, one of the leadership firms from Illinois and one of the Appellee Parties, filed a response in support of the motions to dismiss.

The Objecting Firms opposed the motions to dismiss, arguing, *inter alia*, that their "interest in the amount of attorneys' fees they receive confer[s] Article III standing to challenge the District Court's fee-allocation process and its results," including the January 2021 Settlement Order and the January 2021 Disbursement Orders.  Jt. Suggestions in Opp'n to Aplees.' Mots. to Dismiss, Nos. 21-3021 et al., at *9 (10th Cir., filed Mar. 3, 2021).

Without resolving the motions to dismiss, we abated the Watts Guerra Settlement Appeals pending further order of this Court.  *See* Order, Nos. 21-3021 et al., at *2 (10th Cir., filed Mar. 5, 2021).  We required that "[w]ithin 5 days of a decision in the fee allocation appeals or any other development that affects the abatement of these appeals, the appellants shall file a written report(s) addressing the impact of the decision or other development on these appeals."  *Id.* (bold typeface omitted).

## F.    The IRPA Pool Allocation Appeals and the Contingent Cross-Appeal

Not long after we abated the Watts Guerra Settlement Appeals, and while the original Fee Allocation Appeals were still pending, the district court allocated the

---

[21]    Settlement Class Counsel also moved to dismiss Toups/Coffman's separate appeal, No. 21-3020, but that appeal has since been resolved.  *See infra* note 24.

funds within the IRPA pool.  Specifically, the district court issued an order on June 4, 2021 ("the June 2021 IRPA Pool Allocation Order") that adopted an earlier report and recommendation filed by the special master and awarded $60 million within the IRPA Pool.  *See* Suppl. Jt. App., Vol. XIII, at 3561–3570 (Dist. Ct. Mem. & Order on IRPA Pool Allocation, filed June 4, 2021).

A number of firms, including Byrd/Shields and Hossley-Embry, filed notices of appeal challenging the June 2021 IRPA Pool Allocation Order.  Their appeals were docketed as No. 21-3111 and No. 21-3110, respectively, and we refer to these as the IRPA Pool Allocation Appeals.  Additionally, Kansas Co-Lead Counsel filed a "conditional or contingent cross-appeal" of the June 2021 IRPA Pool Allocation Order, which was docketed as No. 21-3121.

After the IRPA Pool Allocation Appeals were filed, Watts Guerra and Settlement Class Counsel separately moved to dismiss the appeals filed by the Objecting Firms.[22]  Before the Objecting Firms could respond to the motions to dismiss, we issued an order procedurally consolidating the Watts Guerra Settlement Appeals and the IRPA Pool Allocation Appeals and noting that any challenges to the January 2021 Settlement Order or the January 2021 Disbursement Orders "shall remain abated."  Order, Nos. 21-3111 et al., at *2 (10th Cir., filed July 1, 2021).  We subsequently issued an order providing that "[a]ny challenges to the district court's

---

[22]    Settlement Class Counsel also sought to dismiss a separate appeal filed by Toups/Coffman, No. 21-3106, but that appeal has since been resolved.  *See infra* note 24.

allocation of the IRPA pool itself will be addressed in" the IRPA Pool Allocation

Appeals, and that "briefing as to the merits of the IRPA pool allocation is hereby

abated pending further order of this [C]ourt."  Order, Nos. 21-3111 et al., at *1–2

(10th Cir., filed July 12, 2021).  We also procedurally consolidated the contingent

cross-appeal with the IRPA Pool Allocation Appeals and the Watts Guerra Settlement

Appeals.

Additionally, because the June 2021 IRPA Pool Allocation Order was issued

after we held oral argument on the Fee Allocation Appeals, we requested that the

parties file "supplemental briefing as to the effect of the district court's June 4, 2021,

order allocating the IRPA pool on the substantive issues raised in the . . . [F]ee

[A]llocation [A]ppeals."  Order, Nos. 19-3008 et al., at *1 (10th Cir., filed July 12,

2021).  We noted that the supplemental briefs "*shall not* raise any challenge to the

district court's allocation of the IRPA pool itself"—instead, "the merits of the IRPA

pool allocation" would be separately addressed in the IRPA Pool Allocation Appeals.

*Id.*

The parties subsequently submitted their supplemental briefs: in particular,

Byrd/Shields's briefing focused on the deleterious impacts of the Watts Guerra

Settlement and the "meager" twelve percent of the total attorneys' fees award that

was allocated to the IRPA Pool.  *See* Supp. Br. of Aplts. Shields Law Group, LLC

and Paul Byrd Law Firm, PLLC, Nos. 19-3008 et al., at *1–8 (10th Cir., filed July

26, 2021); *accord* Supp. Br. of Aplt. Hossley-Embry, LLP, Nos. 19-3008 et al., at *2

35

(10th Cir., filed July 26, 2021) (incorporating by reference the arguments made by Byrd/Shields).

### G.   Resolution of the Fee Allocation Appeals by *In re Syngenta I*

On February 28, 2023, we issued *In re Syngenta I*, which affirmed the various orders of the district court with respect to the Fee Allocation Appeals including, notably, the district court's December 2018 Fee Allocation Order, March 2019 Kansas Pool Order, July 2019 Minnesota Pool Order, November 2019 Illinois Pool Order, and July 2019 Expense Order.  *See* 61 F.4th at 1138.

#### 1.   Issues Decided in *In re Syngenta I*

After laying out the tortuous procedural history of the case, we had to decide the issue of finality: specifically, given the fact that the district court did not complete allocation of the $503 million until the June 2021 IRPA Pool Allocation Order, did we lack jurisdiction over appeals that were filed *before* that date?  We concluded that "all proceedings after the Kansas district court's Aggregate Fee Order and corresponding Final Order and Judgment constitute one, post-judgment litigation that only concluded with the filing of the June 2021 IRPA Pool Allocation Order," and, consequently, "all appeals challenging the Kansas district court's various allocation orders . . . *before* the June 2021 IRPA Pool Allocation Order were not appeals from final orders as required for our jurisdictional purposes."  *Id.* at 1173–74.  However, we concluded that the appellants' notices of appeal—though prematurely filed—ripened when the June 2021 IRPA Pool Allocation Order was issued, so we had jurisdiction over the Fee Allocation Appeals.  *See id.* at 1176–77.

36

Once assured of our own jurisdiction, we then addressed the various challenges that the appellants—including the Objecting Firms—had made to the district court's fee allocation process.  Ultimately, we rejected all challenges to the district court's decisions, concluding, among other things, that (1) the district court acted within its discretion in modifying the appellants' contingent-fee contracts; (2) the district court acted within its discretion in devising the four-pool system and in determining the appropriate percentages for each pool; (3) the district court acted within its discretion in allocating the funds within the Kansas Common Benefit Pool and the Minnesota Common Benefit Pool; (4) the district court did not err in determining that the joint prosecution agreements did not govern the fee allocation after the Syngenta settlement; (5) the district court acted within its discretion in allotting twelve percent of the aggregate fee award to the IRPA pool; (6) the district court's July 2019 Expense Order was reasonable; and (7) the district court's deferential review of the allocation decisions made by the Illinois federal court did not prejudice the appellants challenging the November 2019 Illinois Pool Order.  We also dismissed one of the cross-appeals raised by Kansas Co-Lead Counsel as moot.

Finally, we also rejected Byrd/Shields's and Hossley-Embry's attempts to file additional briefing to challenge the district court's denial of their motions for reconsideration, *see supra* note 12.  We concluded that Byrd/Shields and Hossley-Embry had "effectively waived their arguments" on the motion for reconsideration by failing to raise them in their opening briefs, and, in any event, their arguments were "meritless and irrelevant to our review."  *Id.* at 1223–24.

Accordingly, we affirmed the judgment of the district court in full.[23]

### 2.    Issues Not Decided in *In re Syngenta I*

Although we resolved the vast majority of the outstanding issues in *In re Syngenta I*, we did not purport to resolve *all* of the issues raised in connection with the attorneys' fees dispute.

First, with respect to the Watts Guerra Settlement Appeals, we acknowledged the existence of the Watts Guerra Settlement Agreement and observed that "[b]y design, the Watts Guerra Settlement would *not* affect the fee awards of firms that were not party to the agreement." *Id.* at 1169.  But we declined to reach Byrd/Shields's argument that "the district court abused its discretion when, [in] January 2021, it re-allocated the amounts awarded to the four pools 'without complying with [Federal Rule of Civil Procedure] 23(h).'" *Id.* at 1208 n.51 (second alteration in original).  In declining to reach this argument, we reasoned that "[a]fter reviewing the record, we find Byrd and Shields's Rule 23(h) argument better described as a challenge to the Watts Guerra Settlement and, therefore, outside the scope of our review in the instant appeal." *Id.*; *see also id.* at 1208 n.52 ("Reflecting the directions of our Supplemental Briefing Order, we confine our discussion of the Kansas district court's approval of the Watts Guerra Settlement to its implications for the court's alleged disregard of the [joint prosecution agreements].").

---

[23]    Several parties, including Toups/Coffman, Hossley-Embry, and Byrd/Shields, sought rehearing *en banc*.  We denied these requests.

Second, with respect to the IRPA Pool Allocation Appeals, we noted that we had previously "prohibited the parties from 'rais[ing] any challenge to the district court's allocation of the IRPA pool itself' and limited the supplemental briefing 'to arguments regarding whether, and to what extent, the [June 2021 IRPA Pool Allocation Order] . . . affect[ed] the fee allocation issues already briefed by the parties.'" *Id.* at 1169 n.26 (alterations and omission in original). We further noted that although the parties had properly filed separate notices of appeal with respect to the June 2021 IRPA Pool Allocation Order—as they were required to do under our precedent—"the merits issues in the appeals now before us focus exclusively on the Kansas district court's orders *before* June 2021, and we have abated the appeals filed with respect to the court's June 2021 IRPA Pool Allocation Order pending our resolution of these appeals." *Id.* at 1177 n.32.

Thus, we declined to decide either the Watts Guerra Settlement Appeals or the IRPA Pool Allocation Appeals.

## H.    Subsequent Proceedings in the Pending Appeals

Notwithstanding their defeat in the Fee Allocation Appeals, on March 15, 2023, the Objecting Firms filed a "Motion to Lift Stay and to Enter a Scheduling Order" in the Watts Guerra Settlement Appeals and the IRPA Pool Allocation Appeals. *See* Mot. to Lift Stay & to Enter a Scheduling Order, Nos. 21-3021 et al., at *1–2 (10th Cir., filed Mar. 15, 2023). According to the Objecting Firms, because we

39

resolved the Fee Allocation Appeals, their remaining appeals are "ripe for consideration." *Id.* at *4–5.[24]

Both the Joint Appellees and Watts Guerra filed responses. In their response, the Joint Appellees agree that the abatement should be lifted, but they "strongly disagree[] . . . that these appeals warrant 'full briefing.'" Jt. Aplees.' Resp. to Shields Aplts.' Mot. to Lift Stay & Enter a Scheduling Order, Nos. 21-3021 et al., at *2 (10th Cir., filed Mar. 27, 2023). They instead suggest that the remaining appeals should be dismissed or summarily affirmed. With respect to the Watts Guerra Settlement Appeals, they argue that the already-filed motions to dismiss should be granted. And with respect to the IRPA Pool Allocation Appeals, they argue that the district court's judgment should be "summarily affirmed." *Id.* at *16.

Watts Guerra opposes the Objecting Firms' request in part, also agreeing that the abatement should be lifted but arguing that its motion to dismiss the Watts Guerra Settlement Appeals should be resolved before reaching the merits of those appeals. *See* Watts Guerra's Opp'n to Shields Aplts.' Mot. to Enter a Scheduling Order, Nos. 21-3021 et al., at *2, *8 (10th Cir., filed Mar. 27, 2023). Watts Guerra also noted that to the extent the IRPA Pool Allocation Appeals "challenge only the allocation within the IRPA pool, Watts Guerra does not consider itself to be an appellee," but

---

[24] The Objecting Firms also sought to re-open Toups/Coffman's appeals of the Watts Guerra Settlement Order and the June 2021 IRPA Pool Allocation Order. But Toups/Coffman themselves asserted that they "d[id] not believe that further proceedings [were] necessary" in either of their remaining appeals. Resp. to May 9, 2023 Order, Nos. 21-3020 et al., at *2 (10th Cir., filed May 22, 2023). We accordingly dismissed both of Toups/Coffman's appeals.

that it "agrees with Joint Appellees that those appeals should be resolved without further briefing." *Id.* at *6 n.3.[25]

We issued an order on May 9, 2023 ("the May 2023 Briefing Order"), that took the Objecting Firms' motion under advisement. *See* Order, Nos. 21-3021 et al., at *1 (10th Cir., filed May 9, 2023). In the May 2023 Briefing Order, we also, *inter alia*, required the Objecting Firms to show cause as to why the Watts Guerra Settlement Appeals should not be dismissed as moot. In response, Byrd/Shields and Hossley-Embry filed identical memoranda asserting that the Watts Guerra Settlement Appeals are not moot. *See* Aplts.' Mem. Concerning Lack of Mootness filed by Byrd/Shields, No. 21-3021, at *1 (10th Cir., filed May 22, 2023); Aplt.'s Mem. Concerning Lack of Mootness filed by Hossley-Embry, No. 21-3022, at *1 (10th Cir., filed May 22, 2023).

---

[25]    Both the Joint Appellees and Watts Guerra also contend that the Objecting Firms filed their motion to lift the stay without complying with 10TH CIR. R. 27.1 or our earlier order requiring the appellants to file, within five days of a decision on the Fee Allocation Appeals, a report explaining the impact of that decision on the pending appeals. The Joint Appellees further suggest that the very fact that the Objecting Firms seek to reopen the Watts Guerra Settlement Appeals and the IRPA Pool Allocation Appeals "should subject [the Objecting Firms] to sanctions." Jt. Aplees.' Resp. to Shields Aplts.' Mot. to Lift Stay & Enter a Scheduling Order, at *14. Because we dismiss the Watts Guerra Settlement Appeals for lack of subject-matter jurisdiction, we decline to take action on—or opine on the merits of—these perfunctory arguments and requests.

## I.      The December 2023 Disbursement Order[26]

Finally, on November 9, 2023, Settlement Class Counsel, as well as a number of other attorneys, filed a motion in the district court requesting that the district court disburse most of the funds remaining in escrow.  The movants asserted that almost $93 million—consisting of the $30 million holdback from the common benefit pools, the entire $60.2 million allocation to the IRPA pool, and over $2 million in funds approved for disbursement but not yet claimed by firms—remained in escrow.  The movants contended that (1) the $30 million that was originally held back from the common benefit pools should be disbursed in light of our resolution of the various fee allocation appeals in *In re Syngenta I*; and (2) the $60 million in the IRPA Pool should also be disbursed even though the IRPA Pool Allocation Appeals remained pending.

---

[26]      Pursuant to FED. R. APP. P. 28(j), the Joint Appellees wrote to us on December 15, 2023, to apprise us of these recent developments in the district court. We have the discretion to take judicial notice of filings on the district court docket. *See, e.g.*, *United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010).  To be clear, we recognize that "standing is determined at the time the action is brought." *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007).  We do not rely on the district court's December 2023 Disbursement Order—issued after these appeals were brought—in our determination *infra* regarding whether the Objecting Firms have standing.  Rather, we notice the order merely to provide a more complete historical picture of the Objecting Firms' arguments concerning the Watts Guerra Settlement Agreement and the court's response to them.  *See, e.g.*, 21B Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 5106.4 (2d ed.), Westlaw (database updated Apr. 2023) (noting that "[j]udicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action" and that "[j]udicial records may sometimes be properly noticed to show the acts of the parties or other actors in the litigation").

Byrd/Shields and Hossley-Embry filed a response in opposition to the motion to disburse.  With respect to the $30 million holdback, the Objecting Firms asserted that those funds should not be disbursed because there were still remaining appeals that implicated the four-pool allocation scheme and the $30 million could be used to reach a settlement with the opposing parties.  And with respect to the $60 million allocation to the IRPA Pool, the Objecting Firms contended that those monies should not be disbursed in light of their pending challenges on appeal to the IRPA Pool.  They also asserted—again—that an additional $7 million was added to that pool by the Watts Guerra Settlement Agreement.

On December 13, 2023, the district court issued an order granting the motion for disbursement ("the December 2023 Disbursement Order").  *See* Mem. & Order, No. 2:14-md-02591-JWL, ECF No. 4713 (D. Kan., filed Dec. 13, 2023).  After concluding that it had jurisdiction to grant the movants' request, the district court concluded that the monies at issue should be disbursed.  As to the $30 million holdback, the district court noted that in *In re Syngenta I*, we affirmed the district court's fee allocation orders, so the awards from the common benefit pools have now been affirmed and, consequently, there is no need for the holdback at this point.  And as to the over $60 million in the IRPA pool, the district court observed that the total allocation to that pool was affirmed in *In re Syngenta I*, and the Objecting Firms had little likelihood of success in the IRPA Pool Allocation Appeals.[27]

---

[27]    This conclusion was based in part on the district court's conclusion that Byrd/Shields and Hossley-Embry "did not preserve (by raising in [the district court])

The district court also opined on the Objecting Firms' likelihood of success in the Watts Guerra Settlement Appeals, noting that it had rejected the Objecting Firms' arguments "on multiple occasions and in the strongest terms."  December 2023 Disbursement Order, ECF No. 4713, at *7.  The district court also stated that "because objectors' fee awards would not be affected (as the payment to Watts Guerra was being made only by certain firms who agreed to the settlement), objectors lacked standing to object to the settlement."  *Id.* at *8.  The district court chastised the Objecting Firms for their failure to address their lack of standing despite the issue having been repeatedly raised.

## II.    DISCUSSION

In *In re Syngenta I*, we did not—and could not—resolve all of the myriad and long-percolating disputes related to attorneys' fees from the Syngenta class action settlement.  Nor do we bring those disputes to an end today.  But we can close the door on one aspect of this protracted litigation by resolving the Watts Guerra Settlement Appeals, which challenge the district court's January 2021 Settlement Order and January 2021 Disbursement Orders.

Although the Watts Guerra Settlement Appeals—Nos. 21-3021 and 21-3022— remain abated at this time, multiple sets of motions are now fully briefed and ready for decision: Watts Guerra's motion to dismiss, Settlement Class Counsel's motion to dismiss, and the Objecting Firms' motion to lift the abatement and enter a scheduling

---

any specific objection to the IRPA award and recommendation that the Court adopted."  December 2023 Disbursement Order, ECF No. 4713, at *7.

order.  For the following reasons, we **grant in part, deny in part, and defer ruling on in part** the Objecting Firms' motion to lift the abatement and enter a scheduling order, and we **lift the abatement**.  We **grant** Watts Guerra's motion to dismiss, **grant** Settlement Class Counsel's motion to dismiss, and **dismiss** these appeals.

We will first discuss the general contours of Article III's case-or-controversy requirement, focusing on two doctrines particularly germane to this case: standing and mootness.  Next, we will lay out the various arguments made by the parties about our subject-matter jurisdiction.  Finally, we will explain how we lack subject-matter jurisdiction over the Watts Guerra Settlement Appeals because (1) the Objecting Firms lack standing to challenge the January 2021 Settlement Order and (2) principles of mootness and standing make clear that we lack subject-matter jurisdiction over any challenge to the January 2021 Disbursement Orders.

## A.    Article III's Case-or-Controversy Requirement

Because federal courts—including appellate courts—are "courts of limited subject-matter jurisdiction," "we 'may only hear cases when empowered to do so by the Constitution and by act of Congress.'"  *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (quoting *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004)).  "Our subject-matter jurisdiction is a constitutional prerequisite to hearing a case," and we have an obligation to ensure that we have jurisdiction before reaching the merits of an appeal.  *Id.*; *see also Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1165 (10th Cir. 2023) ("[W]e have an independent duty to ensure ourselves of our own jurisdiction . . . .").

One fundamental principle of our subject-matter jurisdiction is the "constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "Two related doctrines, standing and mootness, keep federal courts within their constitutional bounds." *Id.* The Watts Guerra Settlement Appeals implicate both doctrines.[28]

### 1.    Standing

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Defs. of Wildlife v. Everson*, 984 F.3d 918, 944–45 (10th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1). As such, "[a] challenge to standing presents the 'threshold jurisdictional question of whether a court may consider the merits of a dispute.'" *Tennille*, 809 F.3d at 559 (quoting *S. Utah*

---

[28]    Another aspect of our jurisdiction is the requirement that appeals be taken from a final decision of the district court—an issue that we analyzed in depth in *In re Syngenta I*. *See* 61 F.4th at 1171–77 (citing 28 U.S.C. § 1291). In that case, we concluded that most of the appellants' notices of appeal were prematurely filed because a final decision was not present until the district court issued the June 2021 IRPA Pool Allocation Order. *See id.* at 1173–74. Nevertheless, we concluded that we had jurisdiction over the various Fee Allocation Appeals because the premature notices of appeal ripened when the June 2021 IRPA Pool Allocation Order was issued. *See id.* at 1177.

Although no party raises the issue of finality with respect to the Watts Guerra Settlement Appeals, we have an independent obligation to ensure our own appellate jurisdiction. *See Rio Grande Found.*, 57 F.4th at 1165. We conclude that—as with the Fee Allocation Appeals—the Objecting Firms' premature notices of appeal challenging the district court's January 2021 Settlement Order and January 2021 Disbursement Orders ripened when the district court issued its June 2021 IRPA Pool Allocation Order. *See In re Syngenta I*, 61 F.4th at 1176–77.

*Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013)).  "The standing

Article III requires must be met by persons seeking appellate review, just as it must

be met by persons appearing in courts of first instance." *Id.* (quoting *Arizonans for*

*Off. English v. Arizona*, 520 U.S. 43, 64 (1997)).  Thus, "[i]f we conclude a party

lacks standing to appeal from a district court's order, we lack jurisdiction over the

appeal and must dismiss it." *Id.*  We review the issue of standing de novo.  *See id.*

"To establish the 'irreducible constitutional minimum' of standing," a party

must make three showings: "'(1) it has suffered an "injury in fact" that is (a) concrete

and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely,

as opposed to merely speculative, that the injury will be redressed by a favorable

decision.'"  *Everson*, 984 F.3d at 945 (first quoting *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560 (1992); then quoting *New Eng. Health Care Emps. Pension Fund v.*

*Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008)).  The party invoking federal

jurisdiction bears the burden of establishing these elements.  *See id.*

For purposes of standing, "a party's injury may be a procedural one 'so long as

the procedures in question are designed to protect some threatened concrete interest

of [the party] that is the ultimate basis of [its] standing.'"  *New Mexico v. Dep't of*

*Interior*, 854 F.3d 1207, 1215 (10th Cir. 2017) (alterations in original) (quoting

*Lujan*, 504 U.S. at 573 n.8).  "To establish standing in such circumstances, a plaintiff

'need only show that compliance with the procedural requirements *could* have better

protected its concrete interests,' and thus that the procedural violation created a 'risk

of real harm . . . .'" *Id.* (citations omitted) (first quoting *WildEarth Guardians v. EPA*, 759 F.3d 1196, 1205 (10th Cir. 2014); then quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).  But a party cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341.

### 2. Mootness

Article III's case-and-controversy requirement is also the basis for our mootness doctrine. *See Unified Sch. Dist. No. 259 v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007).  Mootness is essentially "standing set in a time frame" and ensures that "[t]he requisite personal interest that must exist at the commencement of the litigation . . . continue[s] throughout its existence." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019) (quoting *Brown*, 822 F.3d at 1164).

"A 'suit becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Brown*, 822 F.3d at 1165 (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  "An action becomes moot '[i]f an intervening circumstance deprives the plaintiff of a personal stake'" in the outcome. *Prison Legal News*, 944 F.3d at 880 (alteration in original) (quoting *Brown*, 822 F.3d at 1165).  Thus, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Brown*, 822 F.3d at 1165–66 (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)).  "Put another way, a case becomes moot when a plaintiff no longer

suffers actual injury that can be redressed by a favorable judicial decision." *Id.* at 1166 (quoting *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015)).

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)). "Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious." *Id.* (quoting *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008)). And "[t]he controversy must exist not only at the time the complaint is filed but at all stages of appellate review." *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011); *see also United States v. Fisher*, 805 F.3d 982, 989 (10th Cir. 2015) ("Th[e] case-or-controversy limitation requires that parties continue to have a personal stake in the outcome of a lawsuit during all stages of litigation, including appellate review.").

## B.    Parties' Arguments

Because of the complexity of this case, and the fact that the parties' discussion of our subject-matter jurisdiction has proceeded in a nontraditional matter—*viz.*, throughout a variety of different documents—it is helpful to expressly lay out the parties' various arguments. These arguments can be found in the briefing on the motions to dismiss the Watts Guerra Settlement Appeals, in the responses in opposition to the Objecting Firms' motion to lift the stay, and in the Objecting Firms' memoranda on mootness. We discuss the arguments in each set of filings in turn.

1.    **The Motions to Dismiss**

The most fulsome discussion of our subject-matter jurisdiction exists in the briefing on Watts Guerra's and Settlement Class Counsel's motions to dismiss.  But there is a caveat to taking that briefing at face value: it pre-dates our decision in *In re Syngenta I*, which resolved the related Fee Allocation Appeals.  Thus, we must bear in mind that the landscape of subject-matter jurisdiction—particularly with regard to mootness—has shifted since the motions were briefed.

a.    **Watts Guerra's Motion to Dismiss**

Watts Guerra argues that the Objecting Firms "have no standing to challenge" the Watts Guerra Settlement Agreement because "[t]hey were not required to contribute to the settlement payment, their own attorneys' fees were not reduced, and their own appeals were not affected."  Watts Guerra's Mot. to Dismiss at *2.  Watts Guerra repeatedly points to language in both the Watts Guerra Settlement Agreement itself and the district court's orders indicating that the attorneys' fees received by the Objecting Firms would be unaffected.

Watts Guerra cites the general rule that "a non-settling party does not have standing to object to a settlement between other parties."  *Id.* at *12 (quoting *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992)).  They also compare this situation to *Tennille*, arguing that, like the defendant in *Tennille*, the Objecting Firms are not paying the attorneys' fees at issue here—instead, all money will come from the coffers of the settling parties.

With respect to the January 2021 Disbursement orders, Watts Guerra observes that resolving the Fee Allocation Appeals—which, again, at the time the motion to dismiss was filed, had not yet been resolved—"could moot any challenge" to those orders. *Id.* at *14 n.9.

### b. Settlement Class Counsel's Motion to Dismiss

In their motion to dismiss, Settlement Class Counsel expressly join Watts Guerra's motion to dismiss the Watts Guerra Settlement Appeals insofar as they relate to the January 2021 Settlement Order.  And with respect to the January 2021 Disbursement Orders,[29] they raise two distinct arguments.

First, Settlement Class Counsel argue that the Objecting Firms lack standing to challenge the January 2021 Disbursement Orders because they cannot show "any concrete injury arising from" the January 2021 Disbursement Orders.  Settlement Class Counsel's Mot. to Dismiss at *8.  According to Settlement Class Counsel, the Objecting Firms lack standing because they are "beneficiaries of [those] order[s], which permit[] them to receive reimbursement of all their approved expenses and the

---

[29] Settlement Class Counsel also apparently intended their arguments to relate to any challenge to the district court's December 31, 2020, denial of Byrd/Shields's motion to stay.  *See* Settlement Class Counsel's Mot. to Dismiss at *1 ("Settlement Class Counsel further move to dismiss the three appeals to the extent that [appellants] seek review of the district court's December 31, 2021 [sic] or January 12, 2021 orders denying a motion to stay and granting in part Settlement Class Counsel's request for a partial distribution . . . .").  However, there is no indication that Byrd/Shields or Hossley-Embry challenge that order, which was not named in their notices of appeal.  And to the extent that they originally intended to do so, any challenge to that order would now be moot because the movants asked for any ruling on disbursement to be stayed until after the Fee Allocation Appeals were decided—a condition that has now occurred.

same share of their presently awarded attorneys' fees, from the common benefit pools, as other recipients." *Id.* Furthermore, they argue that the $30 million holdback is sufficient to cover any amount that could possibly be shifted around as a result of the Fee Allocation Appeals.

Second, Settlement Class Counsel argue that we should abate the appeals with respect to the January 2021 Disbursement Orders because a decision on the Fee Allocation Appeals would "almost certainly moot any challenge to the disbursement orders." *Id.* at *7. Given that we did, in fact, abate the Watts Guerra Settlement Appeals and have since resolved the Fee Allocation Appeals, this argument is stale. But it could still bear on the question of whether the appeals are now moot; specifically, Settlement Class Counsel originally argued that the Watts Guerra Settlement Appeals should be abated pending a final decision on the Fee Allocation Appeals because "[o]ne way or another, the resolution of the fee allocation appeals will moot the appeals to the" January 2021 Disbursement Orders. *Id.* at *11. On this point, Settlement Class Counsel argue that if the Objecting Firms "lose their fee allocation appeals, they could not articulate any basis to challenge the disbursement order[s] because the district court's allocation of attorneys' fees [was] affirmed." *Id.*

### c.    The Combined Response to the Motions to Dismiss

In response, the Objecting Firms argue that they have standing because "standing emanates directly from the existence of the attorney fee fund, the District Court's allocation Orders, its reallocation Order, its rejection of Appellant's Motion to Reconsider the District Court's allocations, *and* from the Watts Guerra settlement

agreement which the District Court incorporated into the reallocation Order." Jt. Suggestions in Opp'n to Aplees.' Mots. to Dismiss at *2. Although their specific arguments as to why they have standing are overlapping and difficult to tease apart, they appear to fall into six broad categories.[30]

First, they seemingly contend that the terms of the Watts Guerra Settlement Agreement itself gives them standing because the Settlement Agreement denominates them as "Interested Parties." *See id.* at *8.

Second, they argue that their "interest in the amount of attorneys' fees they receive" confers Article III standing. *Id.* at *9. According to Byrd/Shields and Hossley-Embry, they have a property interest in the $503 million, which suffices to give them standing to challenge the Watts Guerra Settlement Agreement insofar as that agreement changes the ultimate destination of some of those monies.

Third, they argue that the district court in fact reallocated money among the pools. Specifically, they contend that despite its earlier findings of fact and conclusions of law about the propriety of the carefully calculated four-pool allocation (and despite its refusal to grant their motion for reconsideration), the district court

---

[30] In a footnote, the Objecting Firms cite to a case from our sister circuit, *In re High Sulfur Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 2008), noting that, in that case, an immediate disbursement order violated the automatic stay provision of Federal Rule of Civil Procedure 62(a). But they do not develop an argument that the automatic stay provision of Rule 62(a) has, in fact, been violated here or describe how this argument relates to standing. As such, we treat this argument as waived, and we do not count it as a seventh separate argument. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) ("[A]rguments may be deemed waived when they are advanced . . . only 'in a perfunctory manner.'" (quoting *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004))).

"[i]nexplicably . . . increased the IRPA [Pool] fund by $7 million and awarded that increase to Watts Guerra." *Id.* at *13.

Fourth, they argue that the provision of the Settlement Agreement requiring that the Appellee Parties not settle for any amount equal to or greater than the $7 million received by Watts Guerra—a "most favored nation clause"—confers standing.

Fifth, they very briefly mention that the $503 million, including the funds shifted around by the Watts Guerra Settlement Agreement, were "in escrow earning interest which would have been shared among plaintiffs' counsel, including Appellants." *Id.* at *10.  Watts Guerra and Settlement Class Counsel construe this sentence as attempting to argue that the Objecting Firms' entitlement to a share of the interest on the funds shifted around by the Watts Guerra Settlement Agreement suffices to give the Objecting Firms standing.

Sixth, the Objecting Firms argue that they have suffered a procedural injury because the district court failed to comply with Federal Rules of Civil Procedure 23(h), 54(d)(2), and 52(a) when it reallocated $7 million to the IRPA Pool.  They contend that this procedural injury is sufficient to confer standing and, in particular, to satisfy the requirement of causation.

### d.    Replies to the Motions to Dismiss

In reply, Watts Guerra observes that most of the Objecting Firms' arguments as to why they have standing are based on incorrect assertions about the Watts Guerra Settlement Agreement—which *did not* affect the attorneys' fees received by

Byrd/Shields and Hossley-Embry and *did not* result in an additional $7 million being added to the IRPA pool.  And with respect to the arguments about a procedural injury, Watts Guerra emphasizes that "[a]n appellant cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'"  Watts Guerra's Reply in Support of Mot. to Dismiss, Nos. 21-3021 et al., at *7 (10th Cir., filed Mar. 10, 2021) (quoting *Spokeo*, 578 U.S. at 341).  Watts Guerra also asserts that the district court complied with the required procedures.

In a separate reply, Settlement Class Counsel note, among other things, that Byrd/Shields and Hossley-Embry did little—if anything—to rebut their arguments that there is no standing to challenge the January 2021 Disbursement Orders.  They repeatedly argue that, particularly in light of the $30 million holdback, the Objecting Firms had no legal interest in the monies disbursed by the January 2021 Disbursement Orders except for the monies disbursed to them.

### 2.     The Motion to Lift Stay

In their motion to lift the stay on the abated appeals, the Objecting Firms again characterize the Watts Guerra Settlement Agreement as an effort by the settling parties to "in effect, change the District Court's allocations to the four pools . . . and to then divvy up among themselves the money reallocated to the four pools."  Mot. to Lift Stay & Enter a Scheduling Order at *3.  They also assert that the Watts Guerra Settlement Appeals are "ripe for consideration."  *Id.* at *4–5.

In response, the Joint Appellees argue that the Watts Guerra Settlement Appeals should be dismissed because "[m]otions to dismiss have already been fully

briefed and show that Appellants[] lack Article III standing because they were not injured by the orders they appealed."  Jt. Aplees.' Resp. to Shields Aplts.' Mot. to Lift Stay & Enter a Scheduling Order at *3.  They further argue that although we should lift the abatement, we should also grant the motions and dismiss the appeals. Similarly, Watts Guerra argues that we should not request additional briefing and should resolve the Watts Guerra Settlement Appeals by granting the motions to dismiss for lack of standing.

### 3.     Mootness Memoranda

Finally, in response to our May 9, 2023, order, Byrd/Shields and Hossley-Embry each filed near-identical memoranda as to why the Watts Guerra Settlement Appeals were not moot in light of *In re Syngenta I*.  In particular, they argue that we expressly declined to resolve the challenges to the Watts Guerra Settlement Agreement, and consequently, the Watts Guerra Settlement Appeals cannot be considered moot.  They further argue that the Watts Guerra Settlement Appeals are not moot because our previous opinion in *In re Syngenta I* did not have any practical effect.  Specifically, they note:

> In its February 28, 2023 Opinion, [this] Court further found that the district court's December 2018 allocation to the four pools "reflected an extensive—and arguably exhaustive—fee allocation process overseen by numerous courts and numerous individuals, judges, and experts alike."  Until that is, January 2021 when the district court abandoned that fee allocation and decreased three pools (Minnesota, Kansas, and Illinois) and effectively increased the IRPA pool so that it could award an additional $7 million to one firm without providing any legal or factual justification for doing so in violation of Rule 23(h).

> The pool allocation the Court upheld in its February 28, 2023
> Opinion is not the present pool allocation . . . thereby effectively
> rendering the February 28, 2023 Opinion an advisory one, but it
> does not render the present appeal . . . moot.

Aplts.' Mem. Concerning Lack of Mootness filed by Byrd/Shields at *3–4 (citations

omitted); Aplt.'s Mem. Concerning Lack of Mootness filed by Hossley-Embry at *3–

4.  Finally, they argue that our opinion in *In re Syngenta I* did not address some of

their specific arguments raised in the Watts Guerra Settlement Appeals, including

issues of equal protection and due process.[31]

## C.    Lack of Subject-Matter Jurisdiction in this Case

After a review of the parties' filings and the record from the district court, we

conclude that we lack subject-matter jurisdiction over the Watts Guerra Settlement

Appeals, so the appeals must be dismissed.  Specifically, we conclude that (1) the

Objecting Firms lack standing to challenge the January 2021 Settlement Order and

(2) to the extent the Objecting Firms still challenge the January 2021 Disbursement

Orders, principles of standing and mootness make clear that we lack subject-matter

---

[31] Although we did not ask Byrd/Shields or Hossley-Embry to discuss whether the IRPA Pool Allocation Appeals were moot, they both asserted that the IRPA Pool Allocation Appeals were not moot in part because, although the special master relied on the original 12% allocation to the IRPA Pool, the district court "effectively reallocated" additional funds to the IRPA Pool by approving the Watts Guerra Settlement Agreement.  *See* Aplts.' Mem. Concerning Lack of Mootness filed by Byrd/Shields at *2 n.1; Aplt.'s Mem. Concerning Lack of Mootness filed by Hossley-Embry at *1 n.1.  Accordingly, the Objecting Firms contend, the IRPA Pool Allocation Appeals are not moot because "the June 04, 2021 Order awarding IRPA fees cannot withstand scrutiny because it is based on pre-reallocation numbers."  Aplts.' Mem. Concerning Lack of Mootness filed by Byrd/Shields at *2 n.1; Aplt.'s Mem. Concerning Lack of Mootness filed by Hossley-Embry at *2 n.1.

jurisdiction over those challenges.  Consequently, we lift the abatement of the appeals and grant the motions to dismiss filed by Watts Guerra and Settlement Class Counsel.

### 1.     The January 2021 Settlement Order

The parties' filings make clear that the core of the Objecting Firms' challenge is to the January 2021 Settlement Order, which—following the lines set out by the district court's earlier December 2020 Indicative Ruling—approved the Watts Guerra Settlement Agreement and approved the transfer of approximately $7 million from the Appellee Parties to Watts Guerra.  However, despite their vigorous opposition to the Watts Guerra Settlement Agreement, the Objecting Firms lack Article III standing to appeal the district court's approval of that agreement.[32]

We first explain why—in light of our standing precedents—the Objecting Firms lack standing.  We then explain why the Objecting Firms' numerous arguments to the contrary are unpersuasive.  Notably, there is no suggestion in the parties' filings that the standing analysis differs between Byrd/Shields and Hossley-Embry.

---

[32]     As discussed above, Article III's case-or-controversy requirement also requires that a case not be moot.  But although we have previously expressed concern that the Watts Guerra Settlement Appeals may have been mooted by *In re Syngenta I*, because we conclude that the Objecting Firms lack standing, we need not decide whether their challenges to the January 2021 Settlement Order are, in fact, moot.  *See Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quoting *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007))).

Nor can we find any reason why it would. Consequently, we will discuss the standing of the Objecting Firms together.

### a.    The Objecting Firms Lack Standing

The general principles of Article III standing discussed above apply with equal force in the context of class action settlements and attorneys' fees awards. Thus, whether a party has standing to challenge an attorneys' fees award (including in the class action context) depends on whether they were actually aggrieved by the award. *See Tennille*, 809 F.3d at 559; *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088–89 (9th Cir. 2011).

For example, in *Tennille*, we recognized that, "[g]enerally, a settling defendant in a class action has no interest in the amount of attorney fees awarded when those fees are to be paid from the class recovery rather than the defendant's coffers." 809 F.3d at 559. Thus, in that case, we concluded that a defendant lacked standing to challenge how the monies in a common settlement fund (that had already been funded by the defendant) were allocated between class claimants and class counsel. *See id.* at 557, 560; *accord Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1027–28 (E.D. Mich. 2020) (noting that a defendant in a class action had no standing to object to an "incentive award" that class counsel agreed to pay to a plaintiff).

In *Tennille*, we also rejected the defendant's argument that it had a "reversionary interest" in the funds because any amount of the common settlement fund that remained after the awards of attorneys' fees and the payments to the class could—if it was not released to states who released the defendant from liability under

their unclaimed-property laws—be used to satisfy outstanding claims or judgments against the defendant. 809 F.3d at 560–61. We reasoned that any injury to this purported reversionary interest would be "too attenuated from the award of attorney fees" to support standing. *Id.* at 560.[33]

Further illustrating the proposition that the party asserting standing must actually be aggrieved, it has been persuasively held that while class members have standing to appeal an attorneys' fees award if the class recovery and attorneys' fees are paid from a common fund, *see Glasser*, 645 F.3d at 1088; *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 976 (7th Cir. 2003), they generally do *not* have standing to appeal an attorneys' fees award when the award comes from a separate fund, *see Glasser*, 645 F.3d at 1088–89.[34] As the Ninth Circuit explained in *Glasser* when considering whether a class member had standing to appeal an attorneys' fees award paid directly by the class action defendant, "[i]f modifying the fee award would not 'actually benefit the objecting class member,' the class member lacks standing because his challenge to the fee award cannot result in redressing any injury." 645

---

[33]    In contrast, a panel of this Court concluded in an unpublished case that the State of Utah had standing to appeal from the approval of a class action settlement agreement when the agreement changed the beneficiary of a fund for unclaimed monies from the State of Utah to the federal government. *See Allred v. ReconTrust Co., N.A.*, 787 F. App'x 994, 996 n.3 (10th Cir. 2019). We rely on this decision and other unpublished decisions in our analysis only for their persuasive value. *See, e.g.*, *United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015).

[34]    Although it is not relevant here, some courts have recognized a potential exception to this general rule when it is alleged that class counsel obtained an excessive fee *in exchange for* accepting an inadequate settlement for the class. *See Glasser*, 645 F.3d at 1088 (describing the "constructive common fund" doctrine).

F.3d at 1088 (quoting *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002)).  Along the same lines, those who object to a class action settlement have no standing to challenge an attorneys' fees award if, due to their status as objectors, they would receive no pecuniary benefit from a decrease in the amount of attorneys' fees awarded.  *See Hill v. State Street Corp.*, 794 F.3d 227, 231 (1st Cir. 2015); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013).

Likewise—and as particularly relevant here—attorneys have standing to challenge attorneys' fees awards only if the fees that they would be entitled to would be affected.  To be sure, ordinarily the question of whether attorneys have standing to challenge orders on attorneys' fees is relatively straightforward.  That is because the district court's decision on attorneys' fees usually would directly impact the fees that the appellant-attorneys are entitled to receive; consequently, they would have standing.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liability Litig.*, 914 F.3d 623, 640 (9th Cir. 2019) (concluding that law firms whose requests for attorneys' fees had been denied had "the most compelling case for standing because they suffered an injury (deprivation of attorneys' fees) that was caused by the conduct complained of (the Fee Order) and would be redressed by judicial relief").  In such cases—as in the challenge to the various fee allocation orders in *In re Syngenta I*—the issue of standing is unlikely to come up.

But if, due to the unique circumstances of the case, an award of attorneys' fees would have no impact on the fees that a particular attorney could receive, that attorney has no standing to challenge the award.  For example, in *Uselton v.*

61

*Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993), the district court awarded $507,500—29% of the common settlement fund—to class counsel, and later awarded $14,427.49 to a separate counsel. Class counsel challenged both decisions, and we concluded that they lacked standing to object to the award to separate counsel. *See id.* at 854–55. We reasoned that the fee awarded to the separate counsel "came out of the common fund remaining after payment of class counsel's fee. Only the plaintiff class, none of whose members is a party to this appeal, could be considered aggrieved by that award." *Id.* at 855.

The unifying strand throughout these cases is that an appellant—whether a defendant, class member, objector, or attorney—must be actually aggrieved to challenge an award of attorneys' fees. In other words, they must receive a benefit if the award would be vacated. Those principles control the outcome here. The approximately $7 million "reallocated" by the Watts Guerra Settlement Agreement went directly from the coffers of the Appellee Parties to the coffers of Watts Guerra. As the Watts Guerra Settlement Agreement itself and the various orders of the district court made clear, firms that had pending appeals and did not agree to the Watts Guerra Settlement Agreement were not required to contribute to the fund at all.[35] *See* December 2020 Indicative Ruling, ECF No. 4524, at *2 ("[O]bjectors are

---

[35] At times, the Objecting Firms' briefing—whether intentionally or carelessly—elides this critically important fact. For example, in their joint response to the motions to dismiss, the Objecting Firms quote the district court's January 2021 Settlement Order as: "[t]he Court reduces the awards to the Kansas Pool, the Minnesota Pool, and Illinois Pool in the following amounts: . . . The Kansas Pool is reduced by $2,966,333.67 . . . The Minnesota Pool is reduced by $1,582,333.33 . . [.]

not included in the agreement . . ., and their fee awards would not be affected in any way[] . . . ."); Suppl. Jt. App., Vol. I, at 5–6; *see also* Watts Guerra Settlement Agreement, ECF No. 4485-1 at *1–2.[36]

---

the Illinois Pool is reduced by $2,500,000." Jt. Suggestions in Opp'n to Aplees.' Mots. to Dismiss at *6 (omissions in original). The omitted language, though, is crucial. The relevant portion of the January 2021 Settlement Order actually reads:

> (a) The Kansas Pool is reduced by $2,966,333.67, said reduction to be shared *pro rata* according to awards from the Kansas Pool among all firms awarded fees from the Pool except the law firms of [Toups/Coffman] and Hossley-Embry LLP. (b) The Minnesota Pool is reduced by $1,582,333.33, said reduction to be shared *pro rata* according to awards from the Minnesota pool among all firms awarded fees from the Minnesota Pool except the law firms of Watts Guerra LLP; the Watts Guerra Group as that term is defined in § 2 b.1 of the Agreement; the Shields Law Group; the Paul Byrd Law Firm, PLLC; and Johnson Becker PLLC. And (c) the Illinois Pool is reduced by $2,500,000, said reduction to be made from the award to [Heninger Garrison Davis] . . . .

Suppl. Jt. App, Vol. I, at 5–6 (footnote omitted). The omitted language makes clear that the fees received by Byrd/Shields and Hossley-Embry are entirely unchanged by the Watts Guerra Settlement Agreement.

[36]        The district court emphasized this fact yet again in its recent December 2023 Disbursement Order, underscoring that because "the payment to Watts Guerra was being made only by certain firms who agreed to the settlement," the "objectors' fee awards would not be affected" and they "lacked standing to object." December 2023 Disbursement Order, ECF No. 4713, at *8. Again, although this order has not been appealed, we may take judicial notice of it. *See, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). And as we have underscored before, *see supra* note 26, we are fully aware that "[s]tanding is determined as of the time the action is brought." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). As such, we do not rely on the district court's December 2023 Disbursement Order as proof—in whole or part—that the Objecting Firms lack standing. Rather, we exercise our discretion to take judicial notice of this decision because it illustrates (applying a broader historical lens) how the Objecting Firms' arguments about the Watts Guerra Settlement Agreement have been *repeatedly* rejected.

Thus, although the Objecting Firms undoubtedly have an interest in their shares of the $503 million award of attorneys' fees, those shares remain unchanged by the Watts Guerra Settlement Agreement. This puts the Objecting Firms in the same position as the class counsel in *Uselton*, the defendant in *Tennille*, and the class members in *Glasser*: rescinding the award of additional attorneys' fees to Watts Guerra would have no impact on their ultimate fee award.[37] In other words, the Objecting Firms have suffered no injury-in-fact and any redress that this Court could offer by vacating the district court's approval of the Watts Guerra Settlement Agreement would have no impact whatsoever on the financial interests of Byrd/Shields and Hossley-Embry.

This conclusion also accords with the general rule about standing to challenge settlements, which is that "non-settling parties have no standing to challenge a settlement." *New Mexico ex rel. State Eng'r v. Carson*, 908 F.3d 659, 665 (10th Cir. 2018); *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1110 (10th Cir. 2017) (noting that non-settling defendants generally lack standing to challenge a settlement agreement because "they lack 'a legally protected interest in the settlement' and therefore can't satisfy Article III's injury-in-fact requirement" (quoting *Weinman v. Fid. Cap. Appreciation Fund* (*In re Integra Realty Res., Inc.*),

---

[37] The Objecting Firms try to limit *Tennille* to its facts, observing that this case involved an objecting *defendant* rather than an objecting *attorney*. *See* Jt. Suggestions in Opp'n to Aplees.' Mots. to Dismiss at *8. But the general principle of *Tennille*—that a party whose financial interests are unaffected by an award of attorneys' fees has no standing to appeal that award—does not depend on the identity of that party.

262 F.3d 1089, 1102 (10th Cir. 2001))).  Here, that is precisely what the Objecting Firms are—non-settling parties.

And although there is a "limited exception" to this general rule "for non-settling parties who can demonstrate that they will suffer 'plain legal prejudice' as a result of the settlement," *Carson*, 908 F.3d at 665 (quoting *Weinman*, 262 F.3d at 1102), that exception is irrelevant here.  To fall within that exception, a party cannot "show merely the loss of some practical or strategic advantage in litigating their case"; they must instead show a more concrete prejudice, such as the loss of a legal claim or cause of action.  *Weinman*, 262 F.3d at 1102; *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d at 1110 (concluding that a non-party had failed to show that it would suffer plain legal prejudice from a settlement agreement when it averred only that the settlement agreement prejudiced its right to do business as it historically had done and burdened its free-speech rights).  Here, the Objecting Firms have identified *no* concrete prejudice that they will suffer as a result of the Watts Guerra Settlement Agreement.  Nor do they suggest that they fall within this limited exception to the general rule.

Thus, we conclude that the Objecting Firms lack standing to challenge the district court's approval of the Watts Guerra Settlement Agreement.

### b.    The Objecting Firms' Counterarguments

As outlined above, the Objecting Firms have raised a number of overlapping arguments as to why they do have standing to challenge the Watts Guerra Settlement

Agreement and the district court's January 2021 Settlement Order. We are unpersuaded.

*First,* the Objecting Firms contend that they have standing because the Watts Guerra Settlement Agreement denominates them as "Interested Parties." But the Watts Guerra Settlement Agreement merely gives Interested Parties the right to object—it does not mean that approval of the agreement suffices as a concrete and particularized injury to the Interested Parties for purposes of Article III. And the Objecting Firms cite no authority supporting their argument that this provision could give them standing.

*Second*, the Objecting Firms argue that they have an interest in the $503 million aggregate fee award, which suffices to give them standing. But any interest that they have in the $503 million is necessarily limited to their share of the $503 million—which, as described above, would not be impacted by the Watts Guerra Settlement Agreement. *See Uselton*, 9 F.3d at 854–55. They have no concrete interest in funds that they are not entitled to receive. *See id.* And the Objecting Firms' reliance on *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire*, 982 F.2d 603, 612 (1st Cir. 1992) is misplaced. Although the court in that case noted that the appellant-attorneys had a "property interest in escrowed funds," that was because the appellant-attorneys would be "deprived . . . of money" by the order at issue, which "invaded" the attorneys' fees fund to make awards to the steering committee. *Id.* Here, the approval of the Watts Guerra Settlement

Agreement did not deprive the Objecting Firms of money in any way; they have no claim to the diverted funds.

*Third*, the Objecting Firms argue that the district court's January 2021 Settlement Order did more than just facilitate a settlement by diverting monies from the Joint Appellees to Watts Guerra—they contend that it changed the district court's previous allocation among the four pools and resulted in an increase to the IRPA Pool of $7 million that they could not share in.  But, as the district court recognized, this argument is based on a clear misreading of both the Watts Guerra Settlement Agreement and the district court's orders.  The district court has repeatedly emphasized that it was *not* modifying its earlier allocation among the pools, and that it was *not* adding an additional $7 million to the IRPA pool; instead, the district court—and the terms of the Watts Guerra Settlement Agreement—made clear that certain firms' awards from the geographic pools would be reduced and given to Watts Guerra, which would treat its increase *as if it had come from the IRPA Pool* for purposes of distribution.  That is not the same as the district court adding an additional $7 million to the IRPA pool or reworking the four-way split among the pools.

On this point, the district court's discussion of whether it even needed to approve the Watts Guerra Settlement Agreement is illuminating.  The district court vacillated on whether it was necessary for it to weigh in on the settlement agreement, before ultimately deciding that approving the Watts Guerra Settlement Agreement was proper because "by altering at the front end the amounts distributed by the

appointed administrator overseeing the attorney fee fund, the Court will be allowing the agreed redistribution of fees to be accomplished in the most efficient manner, while decreasing the likelihood of later delays or disputes concerning the payments." December 2020 Indicative Ruling, ECF No. 4524, at *4. This makes clear that all the district court did in approving the Watts Guerra Settlement Agreement was to shift money from the Appellee Parties to Watts Guerra for administrative purposes—not to redraw the lines demarcated by the December 2018 Fee Allocation Order.

*Fourth*, the Objecting Firms seem to suggest that a "most favored nation clause" in the Watts Guerra Settlement Agreement confers standing. The provision at issue provides that the "Appellee Parties agree not to resolve any of the other pending appeals for an amount equal to or greater than the" approximately seven million received by Watts Guerra. Watts Guerra Settlement Agreement, ECF No. 4485-1, at *3 (footnote omitted). The "pending appeals" referred to in that provision include, *inter alia*, the Fee Allocation Appeals numbered Nos. 19-3174 and 19-3178, in which Byrd/Shields and Hossley-Embry, respectively, challenged various aspects of the four-pool allocation system. *See id.* at *3 & n.3. According to the Objecting Firms, the most favored nation clause "affects an interest [they] have in the attorneys' fee fund by limiting the amount they can recover in settlement" on those appeals—in other words, the most favored nation clause effectively caps the amount that they could receive in settlement on their Fee Allocation Appeals. Jt. Suggestions in Opp'n to Aplees.' Mots. to Dismiss at *12.

There is, however, a substantial redressability problem with the Objecting Firms' argument. In particular, the relevant appeals are no longer "pending"—the Objecting Firms *lost* the Fee Allocation Appeals mentioned in the most favored nation clause (Nos. 19-3174 and 19-3178) in *In re Syngenta I*. Judgment in both of those appeals has become final with the issuance of the mandate. Thus, even if the most favored nation clause did theoretically impact the Objecting Firms' ability to settle those appeals when they were still ongoing, a decision at this stage reversing the district court's approval of the Watts Guerra Settlement Agreement could not redress any of the alleged harm. Put differently, because it is now impossible for the Objecting Firms to settle their Fee Allocation Appeals, any purported injury to their ability to settle those appeals could not now confer standing on them—and thus could not open the door (absent other jurisdictional hurdles) to our exercise of subject-matter jurisdiction. *See Brown*, 822 F.3d at 1165–66.

Furthermore, we are doubtful in any event that the alleged injury—*viz.*, the effect that the most favored nation clause *might* have on a *hypothetical* settlement agreement between the Objecting Firms and the Joint Appellees—could constitute the necessary "concrete and imminent" injury-in-fact required to confer standing. It is entirely speculative how an effective cap on the amount that the Objecting Firms could receive in settlement could impact settlement negotiations. The speculative nature of the injury is underscored in this case where, in fact, *no settlement was reached*, and the Objecting Firms lost the appeals at issue.

Although no circuit court has squarely addressed this question,[38] a number of district courts—albeit largely in unpublished opinions—have concluded that such a clause is insufficient to confer constitutional standing. *See Brown v. Esmor Corr. Servs.*, No. Civ. 98-1282DRD, 2005 WL 1917869, at *10 (D.N.J. Aug. 10, 2005) (unpublished); *In re VMS Ltd. P'ship Secs. Litig.*, No. 90 C 2412, 1991 WL 134262, at *4 (N.D. Ill. July 16, 1991) (unpublished); *cf. In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 351180, at *2 (N.D. Ill. June 24, 1996) (unpublished) (suggesting, but not deciding, that a most favored nation clause that purportedly made it more difficult to obtain a favorable settlement agreement was insufficient to confer standing). Thus, even though we need not finally resolve this issue in light of the redressability problem mentioned above, the conclusion suggested by these courts—that the "injury" that such a clause inflicts on non-parties to the agreement is too hypothetical and speculative to confer standing—is, at least at first blush, persuasive. It also accords with our own precedents on when non-parties can challenge settlement agreements, which require non-parties to show "plain legal prejudice" from a settlement agreement. *Weinman*, 262 F.3d at 1102 (quoting

---

[38]    Watts Guerra cites a case from our sister circuit, *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 29 (D.C. Cir. 2000), as rejecting the argument that a most-favored nation clause can support standing. But the court in that case concluded that the appellants lacked *prudential* standing—a distinct doctrine from the *constitutional* standing issues present in this case. *See In re Vitamins Antitrust Class Actions*, 215 F.3d at 29; *see also Hill v. Warsewa*, 947 F.3d 1305, 1309–10 (10th Cir. 2020) (discussing prudential standing). Prudential standing has not been raised by any party in this appeal and, unlike constitutional standing, it is not jurisdictional, *see VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 n.4 (10th Cir. 2017), so we need not inquire into it sua sponte.

*Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993)); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d at 1110.  That standard would seemingly not be met by the speculative harm that the most favored nation clause purportedly caused to the Objecting Firms.

> *Fifth*, if the Objecting Firms intended to make an argument that they have standing because of the impact that the Watts Guerra Settlement Agreement would have on their entitlement to interest, they have waived that argument.  Reading the record generously, the Objecting Firms seemed to make this argument to the district court.  *See* Byrd/Shields' and Hossley-Embry's Am. Objs. & Suggestions in Opp'n to the Jt. Mot. for Indicative Ruling, ECF No. 4492, at *8 ("[T]he Joint-Movants . . . now have exerted authority to disburse the interest earned on the aggregate attorneys' fee (interest which belongs to *all* law firms who were awarded common benefit, including [Shields], [Byrd] and [Hossley-Embry]).").  But they do not develop—and barely mention—that argument in their response to the motions to dismiss, only briefly referencing the fact that the Watts Guerra Settlement Agreement affects the $503 million, which was "in escrow earning interest."  Jt. Suggestions in Opp'n to Aplees.' Mots. to Dismiss at *10.  Byrd/Shields and Hossley-Embry do not explain *how* the Watts Guerra Settlement Agreement—which, on its face, only has the potential to affect the earned interest to which *the settling parties* would be entitled—could impact their share of the earned interest.

> At bottom, the Objecting Firms bear the burden of showing that we have jurisdiction over the appeals, and we are not obliged to take up their mantle.  As

such, we conclude that the issue is waived and decline to reach it.  *See Colo.*

*Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 552 (10th Cir. 2016) ("[T]he

plaintiffs don't argue they satisfied the elements of constitutional standing.  And we

decline to make that argument for them."); *Raley v. Hyundai Motor Co., Ltd.*, 642

F.3d 1271, 1275 (10th Cir. 2011) ("Where an appellant fails to lead, we have no duty

to follow.  It is the appellant's burden, not ours, to conjure up possible theories to

invoke our legal authority to hear her appeal."); *cf. United States v. Walker*, 918 F.3d

1134, 1151 (10th Cir. 2019) ("[A]rguments may be deemed waived when they are

advanced . . . only 'in a perfunctory manner.'" (quoting *United States v. Wooten*, 377

F.3d 1134, 1145 (10th Cir. 2004))).

*Sixth*, the Objecting Firms' argument that they have suffered a procedural

injury that suffices to give them standing is unavailing.  To begin, the very premise

of their argument is unsound: as explained above, the district court did *not*

contravene its earlier allocation system by reallocating $7 million to the IRPA Pool

or redrawing the lines of the four pools.  Instead, it simply altered the ultimate

distribution of funds to effectuate the Watts Guerra Settlement Agreement.  Thus,

there was no need for the district court to make additional findings as the Objecting

Firms contend were required under Rules 23(h), 52(a), and 54(d)(2).  Nor, then, did

the district court violate its obligation to ensure that the attorneys' fees award was

reasonable, as the Objecting Firms contend.

Moreover, even assuming that the procedural requirements of Rules 23(h),

52(a), and 54(d)(2) were violated, that alone is not enough to confer standing.  A

procedural injury must, in fact, be related to a concrete injury; "a bare procedural violation, divorced from any concrete harm," is insufficient. *Spokeo*, 578 U.S. at 341; *see also id.* at 342 ("Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the [Fair Credit Reporting Act's] procedural requirements may result in no harm."). But because the Objecting Firms' share of the attorneys' fees awards was entirely unaffected by the Watts Guerra Settlement Agreement, a "bare procedural violation" is all the Objecting Firms can allege.

Finally, despite bearing the burden to show standing, the Objecting Firms cite no authority whatsoever for the assertion that bare violations of the procedural requirements of Rules 23(h), 52(a), and 54(d)(2) are sufficient to give rise to standing under a "procedural injury" theory even when an appellant is not actually impacted by the district court's ruling at issue.

For those reasons, we reject the Objecting Firms' counterarguments and conclude that the Objecting Firms lack standing to challenge the district court's January 2021 Settlement Order.

### 2.    Challenge to the January 2021 Disbursement Orders

With the Objecting Firms' challenge to the January 2021 Settlement Order resolved, all that remains of the Watts Guerra Settlement Appeals is the Objecting Firms' challenge to the January 2021 Disbursement Orders.[39] We must determine,

---

[39]    It is unclear whether the Objecting Firms intend in the Watts Guerra Settlement Appeals to challenge the district court's denial of their motions for

then, if the latter challenge presents any justiciable issues.  Although the parties have

focused on the approval of the Watts Guerra Settlement Agreement itself rather than

the disbursement of funds, logic as well as principles of standing and mootness

dictate that the answer is *no*.

This conclusion follows from the nature of the January 2021 Disbursement

Orders and the scope of the Objecting Firms' challenge to them.  Those orders simply

disbursed the funds previously allocated by the previous fee allocation orders—

specifically, the March 2019 Kansas Pool Allocation Order, the July 2019 Minnesota

Pool Allocation Order, the July 2019 Expense Order, and the November 2019 Illinois

Pool Allocation Order—as modified by the January 2021 Settlement Order approving

the Watts Guerra Settlement Agreement.  In the district court, the Objecting Firms

had opposed this disbursement, arguing (1) the district court lacked jurisdiction to

---

reconsideration, *see supra* note 12.  To the extent that they do so, we reject that
attempt.  In *In re Syngenta I*, we concluded that (1) the Objecting Firms had
"effectively waived" their argument as to why the district court erred in denying their
motions for reconsideration by failing to include the issue in their opening briefs and
(2) noted that their arguments on the motion-for-reconsideration issue are "meritless
and irrelevant to our review, and they do nothing to cast doubt on the Kansas district
court's fee allocation decisions."  61 F.4th at 1223–24.  The Objecting Firms have
not indicated that they believe their challenge to the denial of their motions for
reconsideration remains live after *In re Syngenta I*; they did not mention the issue at
all in any of their filings made after *In re Syngenta I*, including in their memoranda
on mootness.  In fact, the only time that the Objecting Firms have mentioned the
motions for reconsideration at all in the Watts Guerra Settlement Appeals is when the
Objecting Firms mentioned the contrast between the denial of their motions for
reconsideration and the approval of the Watts Guerra Settlement Agreement.  *See* Jt.
Suggestions in Opp'n to Aplees.' Mots. to Dismiss at *3–5, *9.  Particularly in light
of the fact that it is the Objecting Firms' burden to assure us that we have
jurisdiction, we conclude that they may not raise a challenge to the denial of their
motions for reconsideration in the Watts Guerra Settlement Appeals.

distribute the funds because there were pending appeals of the fee allocation orders; (2) it would be difficult to claw back the distributed funds if the fee allocation appeals were resolved in favor of the appellants; and (3) the disbursement was predicated on approval of the improper Watts Guerra Settlement Agreement.

But since the Watts Guerra Settlement Appeals were filed, we affirmed all of the fee allocation orders.  *See In re Syngenta I*, 61 F.4th at 1170.  As such, many of the arguments that the Objecting Firms made against the January 2021 Disbursement Orders—*viz.*, that it would be difficult to claw back the distributed funds if the Objecting Firms were successful in the Fee Allocation Appeals—are now stale.  In other words, we do not see how there can be a live controversy with respect to the distribution of funds allocated by fee allocation orders when *we have already affirmed those orders*.  Any relief that we would grant in vacating the January 2021 Distribution Orders would thus not have any "effect in the real world" because those orders merely effectuated the fee allocation orders which are final.  *Brown*, 822 F.3d at 1165–66 (quoting *U.S. Dep't of Agric.*, 414 F.3d at 1212).  Therefore, the challenge to the January 2021 Disbursement Orders is, at least in part, moot.

This conclusion is supported by the Objecting Firms' memoranda concerning mootness.  Recall that we required Byrd/Shields and Hossley-Embry to explain why the Watts Guerra Settlement Appeals were not moot in light of our resolution of the Fee Allocation Appeals in *In re Syngenta I*.  Their responsive memoranda explained that the Watts Guerra Settlement Appeals were not moot because the challenge to the reallocation of $7 million from the Appellee Parties to Watts Guerra was outside the

75

scope of the Fee Allocation Appeals that we decided in *In re Syngenta I*.  But even though it is their burden to show that we have jurisdiction, the Objecting Firms did not make any distinct argument that a live challenge remained to any other aspect of the January 2021 Disbursement Orders.  In fact, the only time that the Objecting Firms' mootness memoranda referred to the January 2021 Disbursement Orders at all is when they were describing the orders being appealed from—and even there, those orders were discussed only in the context of the Watts Guerra Settlement Agreement. Specifically, the memoranda noted that the Objecting Firms appealed from the

> District court's Order/Judgment overruling the Shields/Byrd Plaintiffs' Counsel's objections to the Motion for Disbursement and Order/Judgment disbursing $444 million to pay attorney fees and expenses where the disbursement occurred after the district court rearranged money among the four pools, but without any findings that its previous allocation among the four pools was unreasonable and without any new findings as required by FED. R. CIV. P. 23(h) that the reallocation (which awarded one law firm an additional $7 million) was fair or equitable.

Aplts.' Mem. Concerning Lack of Mootness filed by Byrd/Shields at *2; Aplt.'s Mem. Concerning Lack of Mootness filed by Hossley-Embry at *2.  Thus, the only aspect of the January 2021 Disbursement Orders that the Objecting Firms *themselves* mention is the fact that those orders incorporate the Watts Guerra Settlement Agreement.  They do not argue *at all* that any other aspect of their challenge to the January 2021 Disbursement Orders is still viable.[40]  Again, we have no obligation to follow where the appellants do not lead.  *See Raley*, 642 F.3d at 1275.

---

[40]    One of the other arguments that the Objecting Firms originally made in opposition to the disbursement of funds was that the district court lacked jurisdiction

And as discussed above, Byrd/Shields and Hossley-Embry lack standing to pursue their challenge to the underlying issue—the approval of the Watts Guerra Settlement Agreement. Thus, to the extent that the appeal of the January 2021 Disbursement Orders challenges the disbursement of the $7 million shifted around by the Watts Guerra Settlement Agreement, the Objecting Firms lack standing to bring that challenge. When that reality is combined with the fact that there is no live controversy about any other aspect of the January 2021 Disbursement Orders, it becomes evident that the Objecting Firms' challenge to those orders does not present the current case or controversy that Article III requires. Thus, we lack subject-matter jurisdiction.

---

because the fee allocation appeals were pending, so the district court should instead have issued an indicative ruling under Federal Rule of Civil Procedure 62.1. The district court rejected this argument, concluding that it had jurisdiction. Byrd/Shields and Hossley-Embry do not mention this aspect of the district court's order in the memoranda they filed in response to our order to show cause as to why the Watts Guerra Settlement Appeals were not moot—instead, they argue only that the Watts Guerra Settlement Agreement was outside the scope of our review in *In re Syngenta I*. Thus, Byrd/Shields and Hossley-Embry have failed to argue that the jurisdictional issue they raised is still viable, and we will not make that argument for them. *See Raley*, 642 F.3d at 1275 ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal."); *Patrick G. by and through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1214–15 (10th Cir. 2022) ("[The plaintiffs] make no meaningful argument—supported by authority or even logic—for why this claim is viable (i.e., not moot) . . . . At the end of the day, [the plaintiffs] must convince us that jurisdiction is present, and we will not make arguments in this respect for them.").

### III.    CONCLUSION

In sum, it is clear from the existing record that the Objecting Firms lack standing to challenge the district court's approval of the Watts Guerra Settlement Agreement, which did not rework the attorneys' fees allocation system and did not in any way affect the Objecting Firms' share of the funds.  Moreover, there is no live controversy with respect to any other aspect of the district court's January 2021 Disbursement Orders.  As such, we lack subject-matter jurisdiction over the entirety of the Watts Guerra Settlement Appeals (Nos. 21-3021 and 21-3022).

In light of that conclusion, we agree with the Joint Appellees and Watts Guerra that we must dismiss the Watts Guerra Settlement Appeals (Nos. 21-3021 and 21-3022).  We thus **lift the abatement** of the Watts Guerra Settlement Appeals, **grant** the motions to dismiss filed by Watts Guerra and Settlement Class Counsel, and **dismiss** these appeals.

More specifically, as to the Objecting Firms' motion to lift the abatement and enter a scheduling order, we **grant it in part, deny it in part**, and **defer ruling on it in part**:

- We **grant** the motion to the extent that it requests that we lift the abatement of the Watts Guerra Settlement Appeals.

- We **deny (as moot)** the motion insofar as it requests that we enter scheduling orders in the Watts Guerra Settlement Appeals.

- And we **defer ruling** on the motion insofar as it requests that we lift the

  abatement or take any other action in the IRPA Pool Allocation Appeals.[41]

---

[41] To be clear, we do not today decide any aspect of the IRPA Pool Allocation Appeals (Nos. 21-3110 and 21-3111) or the Contingent Cross-Appeal (No. 21-3121), including any pending motions in those appeals. Briefing in the IRPA Pool Allocation Appeals and the Contingent Cross-Appeal remains abated, and the Objecting Firms' motion to lift the abatement and enter a scheduling order remains under advisement with respect to the IRPA Pool Allocation Appeals. Nor do we directly opine on the district court's December 2023 Disbursement Order, which is not the subject of any pending appeal.